# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2906SI

_____

| | | |
|---|---|---|
| Joyce Wilson, as Administrator of the Estate of Jerome Leroy Mozee; and Val Wilson, Jr., as Co-Administrator of the Estate of Jerome Leroy Mozee, | * * * * * | |
| Appellees, | * * | |
| v. | * * * | On Appeal from the United States District Court for the Southern District |
| City of Des Moines, Iowa, a municipal corporation; Joseph Morgan, individually and in his official capacity as a Des Moines Police Officer; and Terry Mitchell, individually and in his official capacity as a Des Moines Police Officer, | * * * * * * * | of Iowa. |
| Appellants. | * | |

_____

Submitted: February 14, 2002
Filed: June 7, 2002

_____

Before BYE, HEANEY, and RICHARD S. ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

On April 19, 1999, Jerome Mozee was shot and killed by two Des Moines police officers, Joseph Morgan and Terry Mitchell. Mr. Mozee's estate sued the City of Des Moines and the officers, alleging that the officers used excessive force while pursuing and attempting to restrain Mr. Mozee in violation of 42 U.S.C. § 1983. Both officers moved for summary judgment on the basis of qualified immunity. The District Court denied these motions. The United States Supreme Court then decided Saucier v. Katz, 533 U.S. 194 (2001). After this case was decided, the officers filed a joint supplemental motion for summary judgment, again based on qualified immunity.[1] They argued that Saucier clarified the applicability of qualified immunity to excessive-force claims, and that according to that decision, the Court should determine that their actions and beliefs were reasonable under the circumstances, and that qualified immunity applied. Additionally, the officers argued that any disputed factual issues no longer existed, and that the Court should grant summary judgment in their favor. The District Court denied this motion. The officers appeal.

The officers present three arguments on appeal: first, that the District Court erred by failing to hold that they were entitled to qualified immunity because their belief that Mr. Mozee was armed was reasonable, though mistaken; second, that there are no longer any material factual disputes in the record because of the testimony of a police-procedure expert, Frank Saunders; and third, that the District Court erred in failing to evaluate each of the qualified-immunity claims of the officers individually. We affirm the decision of the District Court. We do so primarily because differences in the two officers' testimony about what happened during the crucial last moments of their encounter with Mr. Mozee raise a genuine issue of material fact about the reasonableness of what the officers did.

---

[1]This case has been transferred from the Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa, to the Hon. Ronald E. Longstaff, Chief Judge of that Court.

I.

The following description of the events leading to Mr. Mozee's death is based on undisputed facts. The disputed factual issues are more fully examined later in our discussion. Around midnight on April 19, 1999, Mr. Mozee was involved in a car accident on the river bridge on Southeast 14th Street in Des Moines, Iowa. After the accident, he got out of his car and was seen attempting to assault the female passenger of the other vehicle involved in the accident. At this time, Officers Morgan and Mitchell were riding in a jail wagon near this location. Information about the accident and the altercation was broadcast over the police radio. The following information was transmitted:

> Attention all officers: The subjects are now at Southeast 14th on the river bridge, Southeast 14th on the river bridge. There's a black male adult beating a female, and he's 1032 with a handgun.[2]

Hearing Trans. 28. The officers responded to the dispatcher's call.

When they arrived at the scene, the officers saw Mr. Mozee running north on the bridge. Both officers got out of their vehicle and began pursuit of Mr. Mozee. They both drew their weapons and chased him into an unlit field located close to the river bridge. Both officers continuously commanded Mr. Mozee to show them his hands. He did not do so. Following his pursuit in the field, Mr. Mozee stopped, turned to face the officers, and looking directly at Officer Mitchell, uttered

_____

[2]1032 is a common police code used in some parts of the country to inform officers that a suspect is armed. According to Officer Morgan's testimony, this indicates that the suspect is carrying an automatic weapon. J.A. 54.

-3-

obscenities. J.A. 60. The officers fired their weapons seven times, killing Mr. Mozee.[3] He was not armed.

## II.

We review the denial of a motion for summary judgment based on qualified immunity de novo. Vaughn v. Ruoff, 253 F.3d 1124, 1127 (8th Cir. 2001). Our review is limited to questions of law. We will affirm the denial of summary judgment on the issue of qualified immunity if a genuine issue of material fact exists whether a reasonable officer could have believed his actions to be lawful. In the present case, the officers contend that there are no genuine issues of material fact. We disagree and affirm the District Court's decision.

The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), recently clarified the manner in which a court should analyze a summary-judgment motion on the basis of qualified immunity in the context of an excessive-force claim. In Saucier, the Court stated that the first question that should be considered is whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. If there is no constitutional violation, then the grant of summary judgment based on qualified immunity is appropriate. If the court determines that a constitutional right was violated, then the Court stated that the next question that should be considered is "whether the right was clearly established." Id.

Graham v. Conner, 490 U.S. 386 (1989), established that force is "contrary to the Fourth Amendment" if that force is "excessive under objective standards of reasonableness." Saucier, 533 U.S. at 201-02. However, in Saucier, the Court went

---

[3]Mr. Mozee was shot once in the palm of his hand, five times in his chest, and one bullet did not enter Mr. Mozee's body. Hearing Trans. 37, 43-44.

on to state that the law must clearly put the officer on notice that his actions are unreasonable. Id. at 202. If the law does not do so, and the officer reasonably (even if wrongly) believes that his conduct is reasonable under the circumstances, summary judgment based on qualified immunity is appropriate. Qualified immunity can apply even in the case of an officer's mistaken belief, if that belief is reasonable. Id. at 206.

Saucier was decided after the District Court denied the officers' first motions for summary judgment. In denying those motions, the Court determined that because Officer Mitchell and Officer Morgan had given inconsistent testimony regarding the events leading to Mr. Mozee's death, material questions of fact existed with regard to the reasonableness of their actions. Therefore, summary judgment was inappropriate. The Court specifically listed eight issues in dispute:

> what information was dispatched to the defendant officers about the incident involving Mozee; what information was reported to the defendant officers at the incident scene; who reported the information to them; what words were exchanged between Mozee and the defendant officers; what distances separated Mozee and each of the defendant officers while he fled and when he stopped and turned; whether Mozee comported himself as if he was concealing a weapon; whether Mozee stopped and turned towards the officers in a shooting stance; and whether either or both officers saw a firearm or believed Mozee had a firearm.

Applt. Addendum 3-4.

Later, when ruling on the officers' supplemental motion for summary judgment, the District Court had the benefit of Saucier. The Court analyzed the applicability of qualified immunity by using the two-part inquiry established in Saucier. It first determined that if all factual disputes were to be resolved in favor of

the person alleging the injury, Mr. Mozee, then a constitutional right was violated, namely the constitutional guarantee of freedom from unreasonable seizures. Applt. Addendum 8. The Court then proceeded to the second part of the inquiry, whether this right was clearly established, and more specifically, whether the officers had notice that their conduct, the fatal shooting of an unarmed suspect, was unlawful under the circumstances presented in this case.

The law is clear that when a police officer is in pursuit of a suspect, force, including deadly force, may sometimes be used to apprehend that suspect. See Tennessee v. Garner, 471 U.S. 1 (1985).

> [I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning is given.

Id. at 11-12. However, under the Fourth Amendment, this force may not be excessive. Graham, 490 U.S. at 397. Any force used by a police officer must be "objectively reasonable in light of the facts and circumstances confronting [him] . . . ." Id. (internal quotations omitted). Because the reasonableness of the officers' beliefs and actions are dependent upon Mr. Mozee's actions in the unlit field, we begin our discussion by examining the facts in the record before this Court.

In denying the officers' first motions for summary judgment, the District Court noted eight issues in dispute. We do not believe that all of these issues merit a thorough discussion. We will not discuss the disputes concerning what information the officers heard broadcast over the police radio, the verbal warnings that the officers received when they arrived at the scene, and who provided these warnings.

It seems likely that these discrepancies are minor and immaterial. We will focus our discussion, instead, on the actions taken by the officers and Mr. Mozee while in the unlit field, immediately before the shooting.

When the officers began their pursuit of Mr. Mozee, they were some distance behind him.[4] Both officers testified that at no time while they were pursuing Mr. Mozee were they able to see his right hand. Officer Morgan testified that Mr. Mozee was running "with his right hand hidden in the front of his pants." J.A. 57. Officer Morgan was on Mr. Mozee's left-hand side during the pursuit. He stated that although he was unable to see Mr. Mozee's right hand while chasing him, he might have seen his right arm. J.A. 57. Officer Morgan also testified that Mr. Mozee was wearing a coat, but that the coat was open. J.A. 57. The description that Officer Morgan provided is consistent with the manner in which an individual would comport himself if he were trying to conceal a weapon.

Officer Mitchell also testified that he was unable to see Mr. Mozee's right hand while they were in pursuit of him in the unlit field. Officer Mitchell was also on Mr. Mozee's left-hand side and approximately twenty feet behind him during the chase.[5] J.A. 93. However, his description of Mr. Mozee varies somewhat from the description offered by Officer Morgan. J.A. 94. Officer Mitchell testified that Mr. Mozee's coat was closed while he was running, although it was not zipped. He also stated that Mr. Mozee had the jacket "pushed across his body," and his left hand looked like it was holding his jacket. J.A. 94. He testified that he did not know if "he

---

[4]Various distances were provided by the officers. These should be more closely examined during the trial on the merits.

[5]Officer Mitchell testified that at one point while he was chasing Mr. Mozee, he was around twelve feet behind him. He testified that he chose to slow down in order to maintain a safe distance.

actually had the coat in his hand . . . to keep it closed, or if it was just his arm, by the nature of how he had it, was keeping his other arm underneath the jacket." J.A. 94.

While in the field, the officers continuously instructed Mr. Mozee to show his hands. Officer Morgan testified that he yelled "let me see your hands" throughout the pursuit. J.A. 58. Officer Mitchell testified that not only did he instruct Mr. Mozee to show him his hands, he also stated, "[i]f you don't get on the ground, I'm going to shoot you," when he was approximately twelve feet behind Mr. Mozee. J.A. 66. Moreover, Officer Mitchell indicated that he also might have used some profanity while in the field. Officer Mitchell acknowledged that Mr. Mozee did not make any verbal threats toward him at this time.

The record does not indicate a specific time during the pursuit when the verbal threats were made by Officer Mitchell or when the derogatory term was used. J.A. 67. Additionally, when Officer Morgan was asked whether Officer Mitchell used any profanity during Mr. Mozee's pursuit, Officer Morgan stated that he could not recall whether any such language was used. J.A. 58. Because it is disputed whether Officer Mitchell actually threatened or cursed at Mr. Mozee while in the field, and if he did use such language, at what point it occurred, we believe that the District Court should submit this issue to a jury. A closer examination of these facts could provide some explanation for Mr. Mozee's use of profanity toward Officer Mitchell, and help determine what level of threat Mr. Mozee actually posed to the officers.

At the end of the chase, Mr. Mozee stopped and turned toward the officers. The manner in which he turned seems to us to be the most important fact in the series of events that led to Mr. Mozee's death, as it reveals the most about the level of threat he posed to the officers.

Officer Morgan testified that when he was approximately fifteen to twenty feet behind Mr. Mozee, Mr. Mozee slowed, stopped, reached into his waistband, turned

around in a "Weaver stance,"[6] and said to Officer Mitchell, "Fuck you, motherfucker." J.A. 60. He further testified that he saw a black, medium-sized handgun, with a black barrel. When questioned about Mr. Mozee's stance when turning, Officer Morgan originally testified that he saw the handle of the gun in Mr. Mozee's waistband, and that when Mr. Mozee stopped and turned, the gun was in his right hand. At that time, Officer Morgan could not recall what Mr. Mozee was doing with his left hand. He stated, "I don't know if he had a second hand on there or not." J.A. 108. However, Officer Morgan testified at his deposition that "[a]s time goes on, when I have time to think about it, there [were] the two hands that came up on the gun." J.A. 62. Officer Morgan then fired his weapon four times. He testified that he believed Officer Mitchell fired first, but that Mr. Mozee never fired. J.A. 63.

Officer Mitchell also described the manner in which Mr. Mozee stopped and turned toward the officers. The details that he provides differ somewhat from those described by Officer Morgan. Officer Mitchell testified that when Mr. Mozee stopped and turned, he was approximately twenty-five feet away. In his initial statement, Officer Mitchell described the manner in which Mr. Mozee turned by simply saying, "as his arms were coming out, I just shot." J.A. 73. However, Officer Mitchell later testified that when Mr. Mozee turned and squared off to him, Mr. Mozee had his right hand at his waistband and was "grabbing at [something] from his waistband." J.A. 65. Officer Mitchell stated that after Mr. Mozee reached into his waistband, he "came out in a two-handed shooting stance," and that his arms "were not in any position other than coming out at me in a shooting position." J.A. 65, 73.

Though each officer testified that Mr. Mozee turned around in a shooting stance, their testimony is not consistent. In Officer Morgan's initial statement, he testified that Mr. Mozee had only one hand on the gun. Additionally, Officer

---

[6]Officer Morgan indicated that Mr. Mozee's hands were clasped together and held directly straight out in front of his body.

-9-

Mitchell initially stated that he shot at Mr. Mozee as Mr. Mozee's arms were extending. Officer Mitchell also testified that he could not state if Mr. Mozee's arms were fully extended when he fired upon Mr. Mozee. The officers' attorney recognized these inconsistencies at the hearing to reconsider the summary judgment motion, though he characterized these as "minor . . . [in] nature." Hearing Trans. 33. He stated, "there may be some slight differences as to what they actually saw in terms of the nature and the extent of the movement, either how quick it was, what hand was moving in what direction, whether it was coming up, [or] whether it was going down . . .." Hearing Trans. 32-33. Moreover, there is evidence that Mr. Mozee was shot by the officers in the palm of his hand. Hearing Trans. 37. That is difficult to square with the alleged "Weaver" or shooting stance described in each of the officers' testimony.

The officers also contend that there are no longer any disputed factual issues because of the testimony of Frank Saunders, a police-procedure expert. Mr. Saunders testified that, with the exception of firing upon Mr. Mozee, the officers acted correctly given the circumstances with which they were presented. However, Mr. Saunders also stated that the use of force by the officers was "totally unwarranted." J.A. 178. Although he testified that both officers gave an almost "mirror image . . . description of a stance that's taught to police on a regular basis," he also acknowledged the variation in the officers' testimony as to the manner in which Mr. Mozee turned to face the officers. When asked about the accuracy of the events that led to the fatal shooting of Mr. Mozee, he stated,

> I would agree with everything except I'm not sure I can interpret what you're saying with his arm outreached. There's been different descriptions even between the two officers as to his movements, but he did stop and turn. In other words, he did not continue to flee.

J.A. 170. Mr. Saunders also suggested that the officers' belief that Mr. Mozee was armed was not objectively reasonable under the circumstances. He stated that the situation "had not reached the point of using deadly force," and that the officers made a "subjective decision based on something they thought they saw but, in actuality, did not." J.A. 179. Therefore, we disagree with the officers' argument that Mr. Saunders served to clarify any or all disputed factual issues in their favor.

The two appellant officers also argue that their cases should be analyzed separately, so far as the issue of qualified immunity is concerned. This of course is true. All of the facts in the summary-judgment record that will be admissible at trial need to be considered with respect to each officer's claim of qualified immunity. This does not mean, however, as appellants seem to think, that in considering the position of Officer Mitchell, for example, only his version of events is to be looked to. The jury will presumably hear both officers' versions of events, and consider them as to both defendants. In general, the chance that an unimpeached witness, even an interested one, will be disbelieved is not enough to defeat a motion for summary judgment. Here, however, there are internal contradictions within one of the officers' testimony, as well as some contradictions between the two officers' testimony. In addition, there is some physical evidence inconsistent with the defendants' account of the incident, and the expert testimony of the police-procedure expert. All of this evidence should be considered, and we have considered it, with respect to each defendant. After doing so, we are convinced, for the reasons previously given, that they were not entitled to judgment as a matter of law on the issue of qualified immunity, and that the District Court correctly denied their motion for summary judgment.

III.

Because of the internal discrepancies and variations in the officers' testimony, among other things, there remain factual issues in dispute that prohibit a grant of

-11-

summary judgment.  The current record does not conclusively establish the reasonableness of the officers' actions or beliefs.  Therefore, we agree with the District Court that summary judgment on the basis of qualified immunity is inappropriate.  We affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.