# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1281
_____

Michael Alvin Partlow

*Plaintiff - Appellee*

v.

Officer Joseph Stadler; Officer Michael Craig; Officer Sidney Mann, individually
and as Jamestown Police Department Officers

*Defendants - Appellants*

City of Jamestown, North Dakota, a municipal corporation

*Defendant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 6, 2014
Filed: December 22, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Police officers Joseph Stadler, Michael Craig, and Sidney Mann fired shots at Michael Partlow after he exited his apartment building holding a shotgun. Partlow filed suit under 42 U.S.C. § 1983, alleging that the officers employed excessive force in violation of his Fourth Amendment rights. The district court held that the officers were not entitled to qualified immunity and denied their motion for summary judgment. We reverse.

I.

On September 18, 2010, Partlow spent the evening at a bar in Jamestown, North Dakota, where he consumed eight to ten alcoholic beverages. He left the bar around 2:00 a.m. with his aunt, Lisa Partlow (Lisa), and her boyfriend, Mark Michel. Michel drove them from the bar to Partlow's apartment.

During the car ride, Partlow talked about ending his life. When they reached his apartment, Partlow jumped out of the car before it stopped, ran to the building, entered his apartment, and locked the door. Lisa called 911 and then hurried to the window of Partlow's basement apartment. She saw that her nephew had a shotgun, and she tried to talk to him through the window. Partlow asked her to leave so that she would not see what was going to happen. After Partlow closed the window, Lisa went into the apartment building through the back door. She saw Officer Mann standing in the hallway.

According to Mann, Lisa was in tears when she approached him. She embraced Mann and told him that Partlow had a shotgun and was suicidal. Mann followed Lisa to the door of Partlow's apartment, where she tried to speak to Partlow. Partlow told her to step away from the door, saying something like, "Don't come in here, you don't want to see this." Mann, who was standing nearby, requested that additional officers be dispatched to the scene. He relayed over his radio that there was a weapon involved and that the subject had said, "You don't want to see this."

-2-

Mann then heard Partlow tell Lisa, "If you are calling the cops, this f-ing gun is going off right now." Mann quietly walked away from the apartment door and exited the building.

State trooper Craig Beedy and Jamestown police officers Stadler and Craig responded to Mann's call, arriving on the scene within minutes. Mann told them what he had heard and described Lisa's demeanor. As the officers discussed what to do next, Michel approached them and said that he had seen a shotgun and ammunition lying on Partlow's bed. Trooper Beedy wrote down Partlow's phone number as given to him by Michel, but before a call could be placed, the officers heard the door of the apartment building crash open. The officers turned toward the door and saw Partlow carrying a shotgun in one hand, with Lisa holding onto his other arm. Beedy testified that Partlow held the gun so that the barrel was pointed forward or slightly down as he exited the building.

Officer Mann yelled, "Gun! He's got a gun." The other officers yelled, "Drop the gun," or, "Put the gun down." Partlow looked to his right toward the officers and seemed surprised by their presence. According to the officers, Lisa fell or was pushed to the ground, freeing Partlow's arm. Mann testified that Partlow then grabbed the bottom of the shotgun, "activated the mechanism loading a round into the chamber, and bladed his body toward us and squared off the weapon at us." According to Mann, the shotgun was pointed at the officers. Craig testified that Partlow grabbed the stock of his gun, chambered a round, raised the gun, and pointed it at him. Stadler testified that after Partlow chambered a round into the shotgun, he "took a shooters position and brought the gun up to his shoulder and aimed it at us." Trooper Beedy did not hear or see Partlow chamber a round. He explained that Partlow "turned to his right, towards the officers, towards us, and he raised the gun at the same time." He testified that Partlow's motion was quick: "I don't think he got [the shotgun] all the way up to his shoulder."

Stadler, Craig, and Mann opened fire, hitting Partlow in the right eye, right forearm, both hands, left groin and hip, and right shin. Partlow fell to the ground and dropped the shotgun. Trooper Beedy testified that he did not shoot because by the time he had taken his gun out of the holster and raised it, Partlow was falling to the ground. After an ambulance was called, Beedy secured Partlow's shotgun and discovered a live round in the shotgun's chamber.

Partlow was charged with terrorizing, in violation of North Dakota Century Code section 12.1-17-04. The police officers, Beedy, Lisa, Partlow, and others testified at the trial. According to Stadler, Craig, and Mann, they felt threatened and had no choice but to shoot. Lisa testified that she followed Partlow as he exited the apartment building and that Partlow "was turning and putting [the shotgun] down" on a step when the officers opened fire. Partlow testified that he heard the command to drop the gun and then remembered falling. Partlow was convicted, and the jury returned a special finding that in the course of committing the offense, Partlow did not inflict or attempt to inflict bodily injury upon another person, nor did he threaten imminent bodily injury with a firearm.

Partlow then filed this lawsuit, alleging the § 1983 claim, as well as state-law tort claims of assault and battery. The district court denied, in part, the defendants' motion for summary judgment.[1] It concluded that the officers were not entitled to qualified immunity because the parties disputed whether Partlow threatened the officers with the shotgun: "It is undisputed that Partlow made some motion with the gun. There is a dispute as to whether the motion was furtive or innocent." D. Ct. Order of Jan. 22, 2014, at 4. According to the district court, "[i]f Partlow did not threaten the officers with his gun, . . . a reasonable jury could find that the officers did

---

[1]Partlow's suit alleged claims against the City of Jamestown and against officers Stadler, Craig, and Mann in their individual and official capacities. The district court granted summary judgment as to the City and as to the officers in their official capacities.

not have probable cause to believe that Partlow posed a threat of 'serious physical harm' either to the officers or others." Id. at 9 (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

## II.

Qualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The determination whether qualified immunity should be granted involves a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Pearson v. Callahan, 555 U.S. 223, 236 (2009). We review *de novo* the district court's summary judgment decision regarding qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010).

## A.

We first address whether we have jurisdiction to decide this interlocutory appeal. Ordinarily, we lack jurisdiction to consider an immediate appeal from an order denying summary judgment because such an order is not a final decision. See 28 U.S.C. § 1291; Krout v. Goemmer, 583 F.3d 557, 563-64 (8th Cir. 2009). "We have limited authority, however, under the collateral order doctrine to review the denial of qualified immunity on summary judgment." Flaherty, 623 F.3d at 583-84 (citing Johnson v. Jones, 515 U.S. 304, 311-12 (1995)). In those cases, we may consider an appeal "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We may not, however, review the denial of qualified immunity to the extent it "determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." Johnson, 515 U.S. at

313; see also Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012) (explaining the "legal/factual dichotomy affecting jurisdiction" on appeal from an order denying qualified immunity).

Partlow argues that we do not have jurisdiction to hear this appeal because it presents only a question of evidence sufficiency—that is, whether there is a genuine dispute that Partlow threatened the officers with the shotgun. The relevant inquiry on appeal, however, is not whether Partlow actually threatened the officers. Instead, it is whether the facts, when taken in the light most favorable to Partlow and assumed to be true by the district court, support a finding that the officers used excessive force. The appeal thus turns on an issue of law, and we have jurisdiction to consider it.

B.

We analyze Partlow's excessive-force claim in the context of seizures under the Fourth Amendment, applying its reasonableness standard. Graham v. Connor, 490 U.S. 386, 396 (1989). We evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. This calculus allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 397. "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Garner, 471 U.S. at 11).

Partlow argues that the force used was excessive under the circumstances. He contends that we must accept the following version of the facts: that he exited the apartment building holding a shotgun in one hand; that he did not know that officers were outside the building; that upon hearing commands to drop the gun, he tried to

-6-

comply; and that he was turning to place the shotgun on the ground when he was shot. Partlow's version of the facts sets forth what he knew and what he intended to do with the shotgun after he was ordered to drop it. It is not determinative, however, of what a reasonable officer on the scene would have perceived. Nor does it answer whether "the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

The following facts are undisputed and set forth the information that a reasonable officer in the position that Stadler, Craig, and Mann were in would have known. The officers arrived on the scene in the dark of night, sometime after 2:00 a.m. They knew that Partlow had a shotgun and was suicidal. Mann heard Partlow threaten suicide and relayed to the other officers Partlow's comment to Lisa, "You don't want to see this." The officers first saw Partlow as he forcefully pushed open the door to the apartment building with a shotgun in his hand. Mere seconds passed from the time Partlow exited the building until the time the officers opened fire. During that time, the officers shouted, "Drop the gun," and they observed Partlow move the shotgun in such a way that the officers believed that Partlow was aiming the barrel of the shotgun at them.

Faced with these "tense, uncertain, and rapidly evolving" circumstances, the officers made a split-second decision to apply deadly force. Even if Partlow intended to do no harm to the officers as he moved the shotgun, the officers' use of force was objectively reasonable. They had no way of knowing what Partlow planned to do. In his brief, Partlow does not argue that in turning to set down the shotgun, his movement was so obviously an attempt to comply with the officers' commands to drop the shotgun that a reasonable officer would have known that opening fire would constitute excessive force. Instead, he cites only Lisa's testimony that after being told to drop his weapon, Partlow "was bent down and then he kind of turned to me" and "he started going down like this while he was turning towards me."

The present case is thus distinguishable from <u>Bell v. Kansas City Police Department</u>, 635 F.3d 346, 347 (8th Cir. 2011) (per curiam). In <u>Bell</u>, the officers had testified that the plaintiff disobeyed orders to show his hands and exit his vehicle. According to the plaintiff, however, he had placed his vehicle in park, turned off the engine, and raised his hands in the air when the officers shocked him with a Taser. Under the plaintiff's version of the facts, a reasonable police officer on the scene would have known that the plaintiff had obviously complied with the officers' instructions, posed little to no threat to anyone's safety, and was not resisting arrest or attempting to flee. In those circumstances, a reasonable officer would have known that applying a Taser shock would constitute the use of excessive force. <u>See id.</u>

It is possible that the officers were mistaken in perceiving that Partlow was taking aim at them. Any such mistake, however, was objectively reasonable in light of the circumstances known to the officers. <u>See Loch</u>, 689 F.3d at 966 ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."). In light of the undisputed facts, taken together with Partlow's version of the disputed facts, a reasonable officer would have had probable cause to believe that Partlow posed a threat of serious physical harm, and any mistake in believing that he posed such a threat was objectively reasonable. Accordingly, we conclude that Stadler, Craig, and Mann are entitled to qualified immunity.

### III.

The judgment denying the officers' motion for summary judgment is reversed, and the case is remanded to the district court for proceedings consistent with the views set forth in this opinion.

BYE, Circuit Judge, dissenting.

I disagree the officers are entitled to qualified immunity for the shooting of Michael Partlow. Instead, I believe a jury should determine whether the officers

violated Partlow's Fourth Amendment right to be free from excessive force. I therefore respectfully dissent from Part II.B. of the decision reversing the district court.

The officers argue, and the majority agrees, it is undisputed the officers perceived themselves to be in danger, and thus they were warranted in shooting Partlow. In determining whether there is any genuine factual dispute, this court is supposed to "view all of the evidence in the light most favorable to [Partlow], drawing all reasonable inferences in his favor." Rohrbough v. Hall, 586 F.3d 582, 585 (8th Cir. 2009). In addition, "[w]e are prohibited from weighing evidence or making credibility determinations at this stage." Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009).

The majority fails to consider the evidence in the light most favorable to Partlow and improperly makes credibility determinations. For example, the majority credits the officers' testimony and announces, as if a non-disputed fact, that the officers observed Partlow move the gun and reasonably interpreted such movement as a threat. Partlow's evidence, however, raises a question of fact regarding whether Partlow did, in fact, move the shotgun in a way which the officers could have reasonably perceived as threatening. While it is true an act taken on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment, if the mistaken perception or belief is not objectively reasonable, then a constitutional violation occurs. Krueger v. Fuhr, 991 F.2d 435, 439 (8th Cir. 1993). Reasonableness is determined from the point of view of a reasonable officer in the situation, id., but the facts most favorable to Partlow demonstrate a question of fact remains whether a reasonable officer would have shot Partlow without warning.

A jury should determine whether it was objectively reasonable for the officers to have the allegedly-mistaken perception or belief Partlow posed an immediate threat to their safety, i.e., whether it was reasonable for the officers to believe Partlow was going to imminently shoot them. Evidence presented by Partlow indicates he was not

threatening the officers; he was not holding the gun in a shooting position; he was talking on the phone rather than aiming the gun; he was turning his back to the officers at the time he exited the building; the officers were tactically hiding themselves; the officers failed to give Partlow any meaningful verbal warning before employing deadly force; Partlow responded to the officers by turning to place the gun on the ground rather than firing; and the most senior and experienced officer did not fire his weapon. Even given the fact Partlow was holding a gun, Partlow's "evidence create[s] genuine issues of material fact concerning whether the force used was objectively reasonable in light of the facts and circumstances confronting [the officers]." Rohrbough, 586 F.3d at 586 (internal quotation marks omitted).

A jury should also determine whether a warning under these circumstances was feasible. Partlow has presented evidence showing the officers failed to warn Partlow of their presence and failed to meaningly warn Partlow they intended to shoot. An officer's failure to assess the situation and give any feasible warning "adds to the unreasonableness" of an officer's actions. Ngo v. Storlie, 495 F.3d 597, 603 (8th Cir. 2007).

Because the officers' actions are not protected by qualified immunity, I would affirm the district court.

_____