# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3001

_____

Piper Partridge, Individually as mother and next of kin to Keagan Schweikle and as Special Administratrix of the Estate of Keagan Schweikle; Dominic Schweikle, Individually as father and next of kin to Keagan Schweikle

*Plaintiffs - Appellants*

v.

City of Benton, Arkansas; Kyle Ellison, Individually and as Employee of City of Benton, Arkansas; Kirk Lane, Individually and as Employee of City of Benton, Arkansas; John Does, 1-20, Individually and as Employees of City of Benton, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: January 12, 2023
Filed: June 12, 2023

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Police officers shot and killed Keagan Schweikle. His parents, Piper Partridge and Dominic Schweikle, sued the officers and the City of Benton, Arkansas, under

42 U.S.C. § 1983 and state law. After the district court dismissed the case on the pleadings, this court reversed and remanded in part. ***Partridge v. City of Benton***, 929 F.3d 562 (8th Cir. 2020). The district court then granted defendants' motion for summary judgment. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

Piper Partridge called police on October 17, 2016. Her teenage son, Keagan Schweikle (Schweikle), had gone into the woods holding a gun and threatening suicide. Benton Police Officer Kyle Ellison, Sergeant Ronald Davidson, and Detective Douglas Speer found him alone by a riverbank. Officer Ellison, about 45 feet from Schweikle, had the only clear view.

Ellison found Schweikle partially turned away from him. He commanded him to show his hands. Schweikle turned toward the officer, revealing a gun in his right hand at his side. Ellison drew his weapon, screaming at Schweikle to drop the gun. Schweikle instead brought the gun to his temple. Ellison continued commanding him to drop the gun. Schweikle moved the gun. Ellison shot and killed him.

The parents sued the city and the officers in both their official and individual capacities. The district court dismissed the suit on the pleadings. This court reversed, holding that the complaint sufficiently alleged that Schweikle "was shot as he began to move the gun away from his head, per Ellison's orders to 'drop the gun,' and never pointed the gun at the officers." ***Partridge***, 929 F.3d at 565. These facts, if established, would be a violation of Schweikle's clearly established right to be free from excessive force. ***Id.*** at 567. This court reversed dismissal of the parents' excessive force and *Monell* claims, vacated dismissal of the state-law claims, and remanded. ***Id.*** at 569.

-2-

After discovery, defendants moved for summary judgment. Citing officer testimony, they claimed that Schweikle pointed the gun at Ellison the moment before he was shot. The parents, citing a forensic expert, claimed that Schweikle never pointed the gun at Officer Ellison. The district court granted defendants' motion for summary judgment. The district court said that plaintiffs had proffered "no evidence supporting their argument that Keagan . . . did not point the muzzle in the direction of the officers." Concluding that no constitutional violation had occurred, the court dismissed all claims. The parents again appeal.

"This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). This court affirms if there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*, *quoting* **Fed. R. Civ. P. 56(c)(2)**. "A fact is 'material' if it may 'affect the outcome of the suit.'" *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022), *quoting* *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There exists "a genuine issue for trial" where a rational trier of fact, considering the record "as a whole," could find for the nonmoving party. *Torgerson*, 643 F.3d at 1042, *quoting* *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

II.

The parents argue that the parties genuinely dispute how Schweikle moved the gun before being shot, and that this dispute is material. Defendants say Schweikle pointed the gun at Officer Ellison, while the parents say that Schweikle lowered the gun away from the officers, "drop[ping] the gun" as Ellison commanded.

This dispute is genuine because the parents introduced enough evidence for a jury to find in their favor. *See* *Zubrod*, 907 F.3d at 575. A forensic pathologist, Dr. Cyril H. Wecht, found it highly unlikely that Schweikle pointed his gun at the officers before being shot. Dr. Wecht testified that, based on Schweikle's autopsy,

-3-

pointing his gun at the officers would have required "a very awkward, highly atypical, unnatural twisting of the wrist." While Schweikle's pointing his gun at the officers may have been "anatomically possible," it would have required "a very abnormal movement." A jury might conclude, based on Dr. Wecht's testimony, that Schweikle did not "awkward[ly]" and "unnatural[ly]" twist his wrist to point the gun at the officers before being shot.

True, Dr. Wecht concedes it was "anatomically possible" for Schweikle to point his gun at the officers. This does not mean that Schweikle *did* point it at the officers. A jury must determine whether Schweikle moved his gun into an "anatomically possible" but "very awkward, highly atypical" position before being shot. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter."); *Torgerson*, 643 F.3d at 1042 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Defendants incorrectly claim it "undisputed" that Schweikle pointed his gun at the officers. But the parents do dispute it. A section heading in their brief opposing summary judgment says Schweikle "Did Not Pose a Threat, Did Not Point a Firearm at Officers." They maintain this position on appeal.

Defendants emphasize the lack of eyewitness testimony that Schweikle did not point his gun at the officers. But a lack of eyewitness testimony is not a lack of evidence. Dr. Wecht's testimony, if believed, supports a reasonable inference that Schweikle did not point his gun at the officers. That suffices to survive summary judgment. *See Anderson*, 477 U.S. at 255 ("[T]he drawing of legitimate inferences from the facts" is a "jury function[.]"). *See also* Judicial Comm. on Model Jury Instructions for the Eighth Circuit, *Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* § 1.04 (2022) ("[T]he law makes no distinction

between the weight to be given to direct and circumstantial evidence."). *Cf. Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (relying on an officer's "unrebutted" testimony where a plaintiff had no recollection of the incident and provided neither direct nor indirect evidence contradicting the officer's testimony).

The officers' testimony that Schweikle pointed his gun appears weaker than defendants claim. Two officers—whose police reports describe Schweikle pointing his gun—later indicated that they could not see Schweikle the moment before he was shot. Even testimony from Officer Ellison—the shooter—could establish either that Schweikle pointed his gun or that "just the movement" of Schweikle's arm prompted Ellison to fire.[1]

Even setting aside internal discrepancies and variations, the officers' descriptions directly contradict the physical evidence as interpreted by Dr. Wecht. In video interviews, all three officers pantomimed how they believed Schweikle moved the muzzle from his temple to point it at the officers. None pantomimed a "a very awkward, highly atypical, unnatural twisting of the wrist." But according to

---

[1]The dissent minimizes inconsistencies between the two other officers' written statements and video interviews and overemphasizes the fact that the writings, submitted one day after the incident, tell similar stories. Sergeant Davidson wrote that Schweikle "moved the muzzle in [the officers'] direction." But during his interview he admitted that a tree "partially obscured" his view of Schweikle and he was unsure where Schweikle's arm was pointing when he was shot. Detective Speer wrote that Schweikle "made a forward motion with the gun," but pantomimed that the muzzle was pointing toward the sky at the moment Schweikle was shot.

Even if the officers' statements were "largely consistent" about the muzzle's direction, a jury could rationally question the officers' recall given the numerous— and admitted—inaccuracies and inconsistencies about everything from the timing of the incident (were shots fired five seconds or "milliseconds" after Schweikle raised his arm?), to the officers' distance from Schweikle (were officers 40 *feet* away or 45 *yards*?), to Schweikle's arm position when he was shot.

Dr. Wecht, the autopsy shows that Schweikle *could not* have pointed the gun without this "awkward" and "unnatural" wrist contortion. Believing Dr. Wecht's testimony—as required on appeal—requires rejecting the officers' accounts. The parties thus genuinely dispute whether Schweikle pointed his gun at the officers. *See Wilson v. City of Des Moines*, 293 F.3d 447, 454 (8th Cir. 2002) ("Because of the internal discrepancies and variations in the officers' testimony, among other things, there remain factual issues in dispute that prohibit a grant of summary judgment.").

This dispute is material because it is "outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). This court has already held that defendants will be liable if Schweikle "never pointed the gun at the officers" but instead "moved his gun in compliance with commands to drop his gun." *Partridge*, 929 F.3d at 565, 567. According to this court, it was clearly established at the time that shooting Schweikle under those circumstances would have been a constitutional violation.[2] *Id.* at 567, *citing* **District of Columbia v. Wesby**, 138 S.

---

[2]The dissent envisions an in-between scenario where—although Schweikle "never pointed the gun at the officers" and "was shot as he began to move the gun away from his head, per Ellison's orders to 'drop the gun," *Partridge*, 929 F.3d at 565—he still somehow moved the gun in a "menacing action" that indisputably provided probable cause to believe that he "posed an immediate deadly threat." The record does not compel this view of the facts. All three officers pantomimed Schweikle *pointing* the gun at them—testimony undermined by Dr. Wecht. To find, as the dissent would, that Schweikle indisputably menaced the officers would ignore the pantomime videos, cherry-pick phrases like "a forward motion" from written reports, and conclude that those phrases describe a motion that—indisputably—is "menacing."

Such usurpation of the jury function is not compelled by this court's precedent. As the dissent's cases show, when an individual *points* a gun at officers, a court can find the action sufficiently "menacing" without asking a jury. *See Partlow v. Stadler*, 774 F.3d 497, 502 (8th Cir. 2014) ("[T]he officers believed that Partlow was aiming the barrel of the shotgun at them."); *Aipperspach v. McInerney*, 766 F.3d 803, 807 (8th Cir. 2014) ("[O]fficers [] believed that Al–Hakim pointed a

Ct. 577, 589 (2018). That decision controls. *See Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010) (describing the "law-of-the-case" doctrine, which "requires courts to adhere to decisions made in earlier proceedings"). A jury could conclude, based on Dr. Wecht's testimony, that Schweikle "never pointed the gun at the officers" but instead "moved his gun in compliance with commands to drop his gun." *Partridge*, 929 F.3d at 565, 567. If it did, the parents could win their case. *Cf. Rogers v. King*, 885 F.3d 1118, 1120–22 (8th Cir. 2018) (affirming qualified immunity where officers initially held their fire as a suicidal woman refused to comply with commands to drop the gun and instead "wave[d] the gun around," but then shot her when she pointed the gun at an officer). Partridge thus identified a genuine dispute of material fact. *See Erickson*, 31 F.4th at 1048 ("A fact is 'material' if it may 'affect the outcome of the suit.'" (quoting *Anderson*, 477 U.S. at 248)).

The parents identified a genuine dispute of material fact whether Schweikle pointed his gun at the officers. This precludes summary judgment. The district court's dismissal of Partridge's excessive force claim is reversed. Because the district court relied on its excessive-force conclusion to dismiss Partridge's *Monell* and state-law claims, those decisions are vacated. *See Wealot v. Brooks*, 865 F.3d 1119, 1128 (8th Cir. 2017) ("[F]or municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

---

real firearm at officers, endangering their lives."); *Rogers*, 885 F.3d at 1122. A court can also conclude the opposite: when an individual is retreating, not pointing his gun, and turned away from a potential target, he is not "menacing" and cannot be shot without warning. *Richards v. Hutchins*, 959 F.3d 1127, 1133 (8th Cir. 2020). But where the evidence does not indisputably establish where and how Schweikle moved the gun as he was shot, this court should not conclude—without a trial—that Schweikle took a "menacing action" with the firearm that created an immediate deadly threat.

\* \* \* \* \* \* \*

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, dissenting.

I would affirm the judgment of the district court. I do not believe that the parents introduced enough evidence to create a genuine factual dispute as to whether Keagan Schweikle moved his gun in the direction of the officers before Officer Ellison opened fire. For that reason, I respectfully dissent.

I.

"When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013). "Officers' excessive uses of force violate the Fourth Amendment if 'objectively unreasonable.'" Tatum v. Robinson, 858 F.3d 544, 547 (8th Cir. 2017) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "Objective unreasonableness is 'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case . . . .'" Id. (quoting Graham, 490 U.S. at 396).

"The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012). While "mere possession of a firearm" is not enough, this Court has recognized that an individual pointing a firearm at another or otherwise moving a firearm in a "menacing action" generally gives officers probable cause to use deadly force. Cole ex rel. Est. of Richards v. Hutchins, 959 F.3d 1127, 1132 (8th Cir. 2020) (citing Partridge v. City

-8-

of Benton, 929 F.3d 562, 566 (8th Cir. 2019)). Accordingly, the dispositive fact in this case is whether Schweikle pointed his gun at the officers or otherwise moved it in a menacing way.

In characterizing the issue as "whether Schweikle pointed his gun at the officers" and nothing more, the majority sets the bar too high. Our cases do not require an armed individual to take direct aim before officers can reasonably use deadly force. Instead, a "menacing action" with a firearm is sufficient so long as such action provides probable cause to believe that the suspect poses an immediate deadly threat. Hutchins, 959 F.3d at 1132; see also Partlow v. Stadler, 774 F.3d 497, 502 (8th Cir. 2014) (use of deadly force objectively reasonable where armed individual "move[d] the shotgun in such a way that the officers believed [he] was aiming the barrel of the shotgun at them"); Aipperspach v. McInerney, 766 F.3d 803, 807 (8th Cir. 2014) (use of deadly force objectively reasonable where individual "held what appeared to be a handgun, refused repeated commands to drop the gun, pointed it once at [an officer], and then waved it in the direction of officers deployed along the ridge line in an action they perceived as menacing"); Rogers v. King, 885 F.3d 1118, 1121-22 (8th Cir. 2018) (use of deadly force objectively reasonable where suicidal individual "failed to respond to commands to drop [her] weapon" and "raised the gun to [the officer']s shin level"); accord Garczynski v. Bradshaw, 573 F.3d 1158, 1168 (11th Cir. 2009) (per curiam) (use of deadly force objectively reasonable where suicidal individual ignored commands to drop gun and instead "swung the gun from his head in the direction of the officers, at which point they fired").[3] On summary judgment, our task is to ask "whether the evidence presents a

--------

[3] Our previous decision in this case is not to the contrary. See Partridge v. City of Benton, 929 F.3d 562 (8th Cir. 2019). There, we held that no reasonable officer could conclude that Schweikle was a threat *based on the facts alleged in the complaint*, including that Schweikle "never pointed the gun at the officers" but instead "was shot as he began to move the gun away from his head, per Ellison's orders." Id. at 565. But we recognized that different facts arising during discovery—namely whether Schweikle moved his gun in a menacing action—could

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The evidence before us is decidedly one-sided. The only eyewitness testimony comes from the three officers present at the scene of the shooting. In their statements taken soon after the incident, all three officers agreed on the primary material fact at issue: that Schweikle initially raised his arm and pointed the gun at his head before moving his arm and pointing or moving the gun toward the officers just before Officer Ellison fired three shots.[4] To rebut these eyewitness accounts

lead to a different analysis. See id. at 566 ("The complaint does not tell the direction or speed Keagan moved the gun, how far he moved it before Ellison shot him, or the timing of the facts."); id. at 567 ("[T]he complaint does not allege that Keagan moved to aim his gun at Ellison. Nor is there an allegation that Ellison believed Keagan to be moving to aim at him.").

[4] Officer Ellison: "I gave another order for the subject to drop the gun and *he moved the gun away from his head and pointed it towards my direction.* I immediately feared for my life and fired three rounds at the subject's chest." Officer Ellison reiterated this same version of events in his video interview with investigators: "He pulled the muzzle away from his head and *began lowering his hand to point the gun in our direction.* That's when I fired three times at him." R. Doc. 60-35, at 7:37-44 (emphasis added). Officer Davidson: "Again, I heard Officer Ellison give the man the command to 'Drop the gun!' It was near this time that *the man brought the gun from his own temple and moved the muzzle in our direction.* As the gun was leveling toward us, Officer Ellison and [the K-9] were still between me and the subject and I heard three shots." Officer Davidson later stated in his video interview with investigators that he felt threatened "at the moment that the gun was coming away from [Schweikle's] head and coming in our direction." R. Doc. 60-12, at 14:44-48. Officer Speer: "I could see in [Schweikle's] right hand a black handgun held to his head. . . . During this time as I was getting my footing, *the subject makes a forward motion with the gun* and I heard three shots." Officer Speer later clarified in his video interview with investigators that Schweikle had moved the gun away from his head and extended it partially (roughly 75%) toward the

-10-

and create a genuine factual issue for trial, the parents offered expert testimony from a forensic pathologist, Dr. Cyril Wecht.  In his report, Dr. Wecht stated that the path of the bullet wounds through Schweikle's body "indicates that his right upper arm was lifted nearly completely laterally away from his body when he was shot, consistent with the report that Keagan was holding a gun in his right hand to his head when police found him."  Later, in his deposition, Dr. Wecht stated that, for Schweikle to have pointed the muzzle of the gun at the officers, it would require "very awkward, highly atypical, unnatural twisting of the wrist."  Nonetheless, while he found it "very difficult to perceive," Dr. Wecht stated, without reservation, that such a movement is "anatomically possible."

In my view, Dr. Wecht's testimony is insufficient to create a genuine factual issue for trial and defeat summary judgment.  Upon a properly supported motion for summary judgment, the nonmoving party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Critical here, the factual dispute must be *genuine*, meaning there is sufficient evidence for a "rational trier of fact to find for the nonmoving party."  Id. (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).  Merely raising "some metaphysical doubt as to the material facts" is not enough to defeat summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Based on the evidence before us, a rational jury could come to only one conclusion: Schweikle moved the barrel of his gun in the officers' direction before Officer Ellison opened fire.  The parents, on the other hand, would ask the jury to reject the officers' unanimous recollection that Schweikle *moved his gun menacingly*

---

officers when he heard Officer Ellison open fire.  R. Doc. 60-31, at 4:45-5:10. Officer Speer confirmed that he felt Schweikle was a threat, given that Schweikle had a gun "pointed at himself, pointed at us."  R. Doc. 60-31, at 6:45-47.

*in their direction* in favor of expert testimony that it would have been "very awkward," but "anatomically possible," for Schweikle to have *pointed his gun at them*. Moving his gun in the officers' direction and pointing it directly at them are not the same thing. Even if they were, "such speculation [by an expert] is not enough to controvert consistent officer testimony to the contrary and generate a genuine dispute of material fact for trial." Jordan v. Howard, 987 F.3d 537, 545 (6th Cir. 2021); cf. Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019) ("[The plaintiff] 'may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony.'" (citation omitted)).

Indeed, to deliver a verdict in the parents' favor, the jury would have to disbelieve both the officers' largely consistent testimony *and* the expert's testimony that is *consistent with* the officers' recollections, namely that it was "anatomically possible" for Schweikle to have pointed the gun at the officers before he was shot. It may be a different case if Dr. Wecht had testified that such a movement was anatomically *im*possible. But that was not Dr. Wecht's testimony. No reasonable jury could find for the parents on such a thin basis.

The majority misinterprets the officers' testimony to directly contradict Dr. Wecht's by pointing out that none of the officers recalled Schweikle awkwardly twisting his wrist, as Dr. Wecht described. This again misses the point. Dr. Wecht testified that "it requires very awkward, highly atypical, unnatural twisting of the wrist to bring the gun around *so that the muzzle of the gun is pointed at the officers*." R. Doc. 66-8, at 43 (emphasis added). But the officers largely testified that Schweikle pointed the gun *in their direction* or at least *moved* the gun in their direction. And the officers' videotaped testimony is entirely consistent with this characterization of the record. The majority asserts that "[a]ll three officers pantomimed Schweikle pointing the gun at them." Supra at 6 n.2. The record shows otherwise. In fact, both Officers Davidson and Speer pantomimed Schweikle moving the gun toward them in a menacing fashion but not pointing it directly at them. See R. Doc. 60-12, at 8:00, 16:15 (Davidson Interview); R. Doc. 60-31,

-12-

at 2:35, 4:44, 5:06 (Speer Interview). Only Officer Ellison arguably pantomimed Schweikle pointing the gun directly at the officers. See R. Doc. 60-35, at 7:37. But Ellison stated immediately thereafter that he did not know exactly how far Schweikle had lowered his hand. R. Doc. 60-35, at 7:55-8:17. Thus, while Dr. Wecht spoke to whether Schweikle was pointing his gun directly at the officers when Schweikle was shot, the officers focused on Schweikle's movement of the gun in the moments immediately before he was shot. According to our cases, such a "menacing action" with a firearm is enough for an officer to reasonably believe that an individual poses an immediate threat of serious bodily harm. See Hutchins, 959 F.3d at 1132 (collecting cases).

The majority also points out that the officers' testimony included inconsistencies. However, these inconsistencies were relatively minor and related only to tangential details: exactly how far the officers were from Schweikle during the incident and exactly how much time elapsed between the moment Schweikle raised the gun to his head and when he allegedly pointed it at the officers.[5] But as to the critical moment when Officer Ellison fired his weapon, the officers' testimony is remarkably consistent. "[D]ifferences in the . . . officers' testimony about what happened during the crucial last moments of [an] encounter," when accompanied by other evidence, may be enough to "raise a genuine issue of material fact about the reasonableness of what the officers did." Wilson v. City of Des Moines, 293 F.3d 447, 449 (8th Cir. 2002). But minor inconsistencies on immaterial details—details that "do[] not change the analysis of the reasonableness of the officers' actions"—are not enough. Smith v. City of Brooklyn Park, 757 F.3d 765, 774 (8th Cir. 2014) (per curiam).

---

[5] The majority states that the officers disagreed on whether they were "40 *feet* away or 45 *yards*" from Schweikle. Supra at 5 n.1. However, Officer Speer clarified in his video interview that while he had written "45 yards" in his statement, that was a misstatement and he meant 45 feet. R. Doc. 60-31, at 6:01-32.

II.

In my view, the parents have not presented sufficient evidence to generate a genuine dispute of material fact. Accordingly, the defendants are entitled to qualified immunity. See Loch, 689 F.3d at 965 (8th Cir. 2012) ("An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation.").

At prong one, Officer Ellison did not violate Schweikle's constitutional rights because his use of deadly force was objectively reasonable under the circumstances. Given the facts as supported by the record—a suicidal teenager under the influence of cough syrup who revealed a handgun to officers and, after repeated commands to drop the gun, removed the gun from his temple and moved it toward the officers— "a reasonable officer would have had probable cause to believe that [Schweikle] posed a threat of serious physical harm, and any mistake in believing that []he posed such a threat was objectively reasonable." Rogers, 885 F.3d at 1122 (citation omitted). This conclusion stands even if Schweikle had no intention of firing upon the officers and never directly pointed his gun at them but was instead attempting to comply with their orders. See Partlow, 774 F.3d at 502-03. What matters from a constitutional perspective is not Schweikle's own intentions but "'whether, from an objective viewpoint and taking all factors into consideration, [Officer Ellison] reasonably feared for his life' or the lives of his fellow officers." Aipperspach, 766 F.3d at 808 (citation omitted). Because Officer Ellison's use of deadly force was objectively reasonable under the circumstances, he did not violate Schweikle's constitutional rights and is entitled to qualified immunity.

Even if the use of force was excessive, Schweikle's right to be free from excessive force was not clearly established. A wealth of case law confirms that "[t]here is 'no constitutional or statutory right' that prevents an 'officer from using deadly force when faced with an apparently loaded weapon.'" Rogers, 885 F.3d

-14-

at 1122 (citation omitted). Further, the parents cite no cases that place Schweikle's right to be free from deadly force in these circumstances "beyond debate." Plumhoff v. Rickard, 572 U.S. 765, 779 (2014) (citation omitted). Thus, even if Officer Ellison did violate Schweikle's constitutional rights, those rights were not clearly established in these circumstances.

Because the parents fail to establish that Officer Ellison violated Schweikle's constitutional rights, much less any clearly established constitutional rights, the parents' municipal liability claims fail as well. See Saunders v. Thies, 38 F.4th 701, 716 (8th Cir. 2022) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.") (citation omitted).

## III.

For the foregoing reasons, I respectfully dissent. The facts of this case are tragic. Nonetheless, I do not believe that the parents introduced enough evidence to rebut the officers' consistent eyewitness testimony that Schweikle moved the barrel of his gun in their direction, which gave Officer Ellison an objectively reasonable basis to use deadly force. I would affirm the judgment of the district court granting summary judgment to the defendants on the basis of qualified immunity.

_____