# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1424

_____

| | |
|---|---|
| Tony Alamo Christian Ministries, A Division of Tony and Susan Alamo Foundation, Inc., | * * * * |
| Plaintiff - Appellant, | * * |
| Albert Ralph Krantz; Gregory Scott Seago, | * * |
| Plaintiffs, | * * |
| v. | * Appeal from the United States * District Court for the |
| John M. Selig, Director of the Arkansas Department of Human Services, in his Individual and Official Capacity; Steve Mason, Administrator of the Arkansas Department of Human Services, Texarcana, Miller County, Arkansas Division, in his Individual and Official Capacity; and Gwen Lovelace, Administrator of the Arkansas Department of Human Services, Fort Smith, Arkansas Division, in her Individual and Official Capacity, | * Western District of Arkansas. * * * * * * * * * * * * * |
| Defendants - Appellees. | * |

_____

Submitted: March 16, 2011
Filed: January 11, 2012

_____

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,[*] District Judge.

_____

NELSON, District Judge.

In this appeal from the district court's[1] dismissal of a Section 1983 action on grounds of standing and <u>Younger v. Harris</u> abstention, Plaintiff-Appellant Tony Alamo Christian Ministries ("TACM" or "the church") argues that it has standing to assert various constitutional claims and that the district court also erred in abstaining in deference to the pending state-court actions regarding whether the minor children of the members of the church were neglected or abused. Defendants-Appellees John Selig, the Director of the Arkansas Department of Human Services, and Steve Mason and Gwen Lovelace, two other officials of that state agency, contend that the district court relied on abstention only with respect to the individual Plaintiffs, Albert Ralph Krantz and Gregory Scott Seago–two members of the church who have not appealed the dismissal–and that TACM does not have standing to assert claims alleging a deprivation of its own federal rights much less those of its individual members.

We agree that the district court applied abstention only with respect to the individual Plaintiffs, and that it dismissed TACM solely for lack of standing. Without reaching the question of standing at the pleading stage, however, we affirm because the court's analysis of <u>Younger</u> abstention with respect to the two individual Plaintiffs is equally applicable to TACM.

_____

[*]The Honorable Susan Richard Nelson, United States District Court for the District of Minnesota, sitting by designation.

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In September 2008, federal and state officials, including the Arkansas Department of Human Services, took custody of numerous minor children of members of TACM who lived on TACM's property in order to protect them from abuse. After the officials removed the children from TACM property, the Arkansas state courts adjudicated many, if not all, of the seized children to be dependent-neglected. State court proceedings also resulted in the termination of the parental rights of many of the church's members.

On April 9, 2009, Plaintiffs filed this Section 1983 action seeking declaratory and injunctive relief. They also simultaneously filed a motion for a preliminary injunction. Defendants, after having filed their Answer, moved for judgment on the pleadings.

Plaintiffs generally allege that Defendants violated their constitutional rights, including those under the First and Fourth Amendments–and did so in bad faith–by seizing the minor children of Seago, Krantz and numerous other members of TACM and imposing certain conditions on the parents in order to regain custody of their children. In particular, TACM alleges that it has suffered, both directly and in a representational capacity, various injuries as a result of (1) the seizures of the children, (2) the alleged policies underlying those seizures, (3) the conditions imposed for the parents to regain custody of their children, and (4) the ensuing fallout from these events. The Complaint alleges that TACM "asserts its own rights, the rights of its faculty and staff, and the rights of its students, members, ministers and their families." (App. at 13 (Compl. ¶ 19).) It also alleges that the church has standing

> to assert these rights and claims because the members, ministers, students and staff would have standing to assert these rights in their own right. The Church is seeking to protect interests that are germane to its purpose; and neither the claims asserted nor the relief requested requires

the participation of individual members, ministers, students, staff or their families in this lawsuit.

(Id. at 13-14 (Compl. ¶ 22).) Thus, TACM alleges not only standing in terms of its own injuries ("associational standing"), but also "representational standing" to assert the rights of its members, ministers, students and staff. "[A]n association may have standing in its own right to seek judicial relief from injury to itself," Warth v. Seldin, 422 U.S. 490, 511 (1975) (referring to such as "associational standing"), and "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members," id.

In February 2010, the district court granted Defendants' motion for judgment on the pleadings, ruling that (1) Younger abstention barred at least the individual Plaintiffs' claims, and (2) TACM lacked standing. With respect to the two individual Plaintiffs, the district court ruled that granting the relief they requested in federal court would interfere with the ongoing state proceedings, that protecting children from abuse and neglect are important state interests and that the individual Plaintiffs do not contend that they will be unable to raise their constitutional claims in state court.

With respect to TACM, the district court ruled that it

does not allege any deprivation of a legally protected interest. TACM does not have a legally protected interest in its membership numbers, any charitable donations it receives, or the amount of people it serves through its outreach ministries. Because TACM has no legitimate expectation of entitlement to the aforementioned things, there is no injury to a protected constitutional interest when any of these things are diminished. Moreover, TACM cannot show that any alleged injury it has suffered is "fairly traceable" to the actions of Defendants. Because TACM cannot prove an injury in fact to a legally protected interest and cannot show a causal connect[ion] between the alleged injury and the conduct complained of, TACM lacks standing to bring its claims in this action.

-4-

(App. at 226.) Thus, it appears that the district court addressed standing only in terms of TACM's own injuries to it as an entity.

Only TACM has appealed.

## II.  DISCUSSION

We review a dismissal for lack of standing under a de novo standard.  E.g., St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 484 (8th Cir. 2006). Likewise, we also review a "grant of judgment on the pleadings de novo."  Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008).  We apply the same standard used by the district court:  generally, we view the facts as alleged in the non-movants' Complaint as true and make all reasonable inferences in their favor.  Id.

We need not resolve any issues of standing because, even if TACM would have standing, the district court should have dismissed not only the individual Plaintiffs, but also TACM, based on Younger abstention.  We may affirm based on any grounds supported by the record.  Jones v. Correctional Med. Servs., Inc., 401 F.3d 950, 951 (8th Cir. 2005).  And we may affirm on abstention grounds without first resolving the standing issues.  Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("Nor must a federal court decide whether the parties present an Article III case or controversy before abstaining under Younger v. Harris.");  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) (noting that district courts do not err when they "abstain under *Younger v. Harris* . . . without deciding whether the parties present a case or controversy");  see  Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 100 n.3 (1998) (treating *Younger* abstention "as jurisdictional").

Under current Younger v. Harris doctrine, federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to

raise any relevant federal questions. <u>Plouffe v. Ligon</u>, 606 F.3d 890, 894-95 (8th Cir. 2010) (citing <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)). In such circumstances, principles of comity and federalism preclude federal actions seeking injunctive or declaratory relief. <u>Younger v. Harris</u>, 401 U.S. 37, 41 & n.2 (1971) (noting companion case of <u>Samuels v. Mackell</u>, 401 U.S. 66 (1971), regarding declaratory relief).

Regarding the second component for <u>Younger</u> abstention, there is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the doctrine. <u>Moore v. Sims</u>, 442 U.S. 415, 423-24 (1979) (holding that district court should have abstained where there were ongoing state-court proceedings regarding welfare of abused children). And the fact that TACM is a religious entity does not, of course, preclude application of <u>Younger</u> abstention. "Even religious schools cannot claim to be wholly free from some state regulation." <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 628 (1986) (holding that district court should have abstained from action brought by religious school where it could raise its constitutional claims in state administrative proceedings).

Nor is there any doubt, with respect to the third component of <u>Younger</u> abstention, that the Arkansas Court of Appeals addressed several of the parents' constitutional claims regarding the seizure of the children. For example, one parent argued, although unsuccessfully, that the state's case plan for his children violated the Free Exercise Clause because it "makes him choose between his children and his church." <u>Thorne v. Arkansas Dept. of Human Servs.</u>, ___S.W.3d ___, 2010 WL 1988182 (Ark. App. May 19, 2010) ("We see no constitutional infirmity in the circuit court's disposition order on this record."). <u>Accord</u> <u>Parrish v. Arkansas Dept. of Human Servs.</u>, 2010 WL 1487224 (Ark. App. April 14, 2010) (expressly following <u>Thorne</u>). And Krantz himself raised constitutional objections, but the state court of appeals rejected them for the same reasons as in <u>Thorne</u>. <u>Krantz v. Arkansas Dept.</u>

of Human Servs., 2010 WL 1487246 (Ark. App. April 14, 2010) (unpublished), pet. for cert. denied, 131 S. Ct. 925 (2011).[2]

Likewise, the Supreme Court of Arkansas addressed several of the parents' constitutional issues in affirming the circuit court decisions terminating their parental rights, including those of the two individual federal Plaintiffs here, Krantz and Seago. They each contended that the termination order violated their constitutional rights to the free exercise of their religion. But the state court rejected those claims for the same reasons the court rejected similar claims in one of the companion appeals. Krantz v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1599339 (Ark. April 28, 2011); Seago v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1598969 (Ark. April 28, 2011). Accord Myers v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1599293 (Ark. April 28, 2011), pet. for cert. denied, 132 S. Ct. 403 (2011); Reid v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1599266 (Ark. April 28, 2011); Parrish v. Arkansas Dept. of Human Servs., 2011 WL 1631123 (Ark. April 28, 2011) (unpublished). The mere fact that the state courts consistently rejected those claims is, of course, no basis for the lower federal courts to entertain them in a Section 1983 action. See Allen v. McCurry, 449 U.S. 90, 99 (1980) (explaining that Section 1983 does not guarantee a federal forum for claims of deprivations of federal rights).

_____

[2]With respect to the children of Seago (as well as those of other members), in contrast, the Arkansas Court of Appeals expressly declined to address their constitutional argument because they "did not raise it below." Seago, ___S.W.3d at ___, 2009 WL 3852785 at *__; Broderick, ___S.W.3d at ___, 2009 WL 3853149 at *__; Myers v. Arkansas Dept. of Human Servs., 2010 WL 1997411 (Ark. App. May 19, 2010). But that is no bar to application of Younger abstention because all that is required is that the federal plaintiff had the opportunity to raise federal issues in the state-court actions. Juidice v. Vail, 430 U.S. 327, 337 (1977) ("[A]ppellees had an opportunity to present their federal claims in the state proceedings. No more is required to invoke Younger abstention.").

The first component of <u>Younger</u> abstention, the existence of ongoing state proceedings, is also met.  Although Plaintiffs filed their Complaint on April 9, 2009, some seven months after the first state-court proceedings were initiated in the wake of the initial seizure of the children in September 2008, the various proceedings in state court were still ongoing when Plaintiffs sought relief in federal court.  For purposes of applying <u>Younger</u> abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed.  <u>Beltran v. State of California</u>, 871 F.2d 777, 782 (9ᵗʰ Cir. 1989) ("*Younger* abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed."); 17B Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 4253 (3ʳᵈ ed. 2007) ("Younger v. Harris and its companion cases went to great pains to make it clear that the rules there laid down applied only if there was a prosecution pending in state courts at the time the federal proceeding was begun.").[3]

Granted, one of the first relevant state-court decisions, that involving the daughter of one of the individual Plaintiffs here, had already been issued on December 11, 2008.  <u>See</u> <u>Seago v. Ark. Dept. of Human Servs.</u>, ___ S.W.3d ___, 2009 WL 3852785 (Nov. 18, 2009) (noting that lower court "entered the adjudication order on December 11, 2008, finding [Seago's daughter] dependent-neglected").  In <u>Huffman v. Pursue, Ltd.</u>, however, the Supreme Court ruled that <u>Younger</u> requires a federal court to abstain not only when and while the state trial court proceedings were ongoing, but until the state defendant (and federal plaintiff) exhausts his appellate remedies.  420 U.S. 592, 608-09 (1975) ("We therefore hold that Younger standards

---

[3]In <u>Night Clubs, Inc. v. City of Fort Smith, Arkansas</u>, we stated that "*Younger* requires that the state proceeding must be ongoing at the time the district court enters its order regarding abstention."  163 F.3d 475, 480 (8ᵗʰ Cir. 1998) (citing <u>Wiener v. County of San Diego</u>, 23 F.3d 263, 266 (9ᵗʰ Cir. 1994)).  Here, the various state-court proceedings were not completed until April 2011, well after the district court's February 2010 decision.

must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies.").

Here, the appeals of the state-court decisions that the minor children of Krantz and two others of Seago were "dependent-neglected" were ongoing until April 14, 2010 and February 17, 2010, respectively. Krantz v. Arkansas Dept. of Human Servs., 2010 WL 1487246 (Ark. App. April 14, 2010); Seago v. Arkansas Dept. of Human Servs., 2010 WL 546410 (Ark. App. Feb. 17, 2010) (concluding Seago's two sons were dependent-neglected). Other church members' appeals were likewise ongoing when the federal complaint was filed on April 2, 2009, as well as when the court below issued its decision on February 1, 2010. Thorne v. Arkansas Dept. of Human Servs., ___S.W.3d ___, 2010 WL 1988182 (Ark. App. May 19, 2010); Parrish v. Arkansas Dept. of Human Servs., 2010 WL 1487224 (Ark. App. April 14, 2010).

In fact, state court proceedings were ongoing until April 28, 2011, when the Supreme Court of Arkansas affirmed several circuit court decisions terminating various church members' parental rights, including those of the two individual federal Plaintiffs here, Krantz and Seago. E.g., Krantz v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1599339 (Ark. April 28, 2011); Seago v. Arkansas Dept. of Human Servs., ___ S.W.3d ___, 2011 WL 1598969 (Ark. April 28, 2011).

But the fact that the state court proceedings are now apparently complete does not suggest that once those state-court remedies are exhausted, Younger no longer poses any hurdle to maintaining–or resuming–the federal action. Where Younger abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings. Beltran, 871 F.2d at 782 ("Where *Younger* abstention is appropriate, a district cannot refuse to abstain, retain jurisdiction over the action, and render a decision on the merits after the state proceedings have ended.").

TACM claims that a dismissal under <u>Younger</u> would leave it in a "no man's land," "with no ability to become a party in state court yet no remedy in federal court." (Rep. Br. at 1.) But, of course, state-court litigants such as the parents here may appeal from an adverse state supreme court decision to the United States Supreme Court under 28 U.S.C. § 1257. <u>Huffman</u>, 420 U.S. at 605 ("A civil litigant may, of course, seek review in this Court of any federal claim properly asserted in and rejected by state courts."). In fact, two members of the church sought such review here, but the United States Supreme Court denied certiorari. <u>Myers v. Arkansas Dept. of Human Servs.</u>, 132 S. Ct. 403 (2011); <u>Krantz v. Arkansas Dept. of Human Servs.</u>, 131 S. Ct. 925 (2011). And as we noted above, Section 1983 does not guarantee a federal forum.

The only remaining issue is whether TACM's interests are sufficiently intertwined with those of its individual members to warrant the extension of <u>Younger</u> abstention to the church. The fact that TACM itself was not a party to any of the state-court proceedings does not preclude the application of <u>Younger</u> abstention in federal court. <u>Hicks v. Miranda</u>, 422 U.S. 332, 348-50 (1975) (holding that federal courts should abstain from action brought by those that have "a substantial stake in the state proceedings," even though they were not parties to such proceedings, but whose interests were intertwined with those who were parties).

There are, of course, limitations on the application of <u>Younger</u> abstention to federal plaintiffs who were not state-court parties. In <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922 (1975), the Court addressed an action brought by three separate corporations that each operated a bar featuring topless dancing. After a town enacted an ordinance prohibiting such dancing, each bar complied with the ordinance but filed a federal action challenging the constitutionality of the ordinance and seeking injunctive and declaratory relief. One day after filing their federal complaint, however, one of the three bars resumed topless dancing. Accordingly, it and several individual dancers

were served with criminal summonses. The other two bars did not resume topless dancing until after the federal court issued a preliminary injunction.

The Supreme Court ruled that all three plaintiffs should not "automatically be thrown into the same hopper for Younger purposes." Id. at 928. "While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them, this is not such a case." Id. at 928-29 (noting that the corporations "are apparently unrelated in terms of ownership, control and management"). "We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone." Id. at 929 (reversing grant of preliminary injunctive relief to the one bar against which state-court criminal proceedings had been initiated, but affirming grant of injunctive relief with respect to the other two for which no state-court proceedings were pending when they filed their federal complaint).

But here, unlike the situation addressed in Doran, we are not presented with multiple, independent corporate plaintiffs. Rather, TACM is a religious entity and the two individual federal Plaintiffs are members of the church. The relationship between TACM and the individual member parents is also distinguishable from the scenario we addressed in Cedar Rapids Cellular Tel. L.P. v. Miller, where we reiterated that "[i]t is not a prerequisite to Younger abstention that the federal plaintiffs also be defendants in the action pending in state court." 280 F.3d 874, 881 (8th Cir. 2002).

In Miller, we confronted a federal action by three companies–Cedar Rapids Cellular, Davenport Cellular, and WWC License–seeking to enjoin Iowa's Attorney General from enforcing consumer protection statutes against them. The same day that the federal plaintiffs filed their action, the Attorney General filed a state-court action against U.S. Cellular, the parent corporation of Cedar Rapids Cellular and Davenport Cellular, two of the federal plaintiffs. Although the three federal plaintiffs sought to

enjoin the Attorney General only from proceeding against them, "a group that does not include U.S. Cellular," we held that Younger abstention applied with respect to the two federal plaintiffs in which U.S. Cellular, the state-court defendant, had "a controlling interest." Id. at 882. We noted that the Attorney General's "state-court action seeks an injunction against 'all other persons, corporations and other entities acting in concert or participating with' U.S. Cellular." Id. at 882. "In contrast, the claims of WWC [License] do not seek to interfere with the proceeding in state court." Id. Rather, its status as a plaintiff along with the other two companies was analogous to the facts of Doran, in which the Supreme Court separated the two corporations that were not subject to the state-court action from the third that was subject to the state-court action. Id. "Although WWC's interests are generally aligned with those of U.S. Cellular, it does not have the type of close relationship with U.S. Cellular that Cedar Rapids Cellular and Davenport Cellular do." Id.

Whether TACM's claims are sufficiently related to, or inextricably intertwined with, those of the two individual Plaintiffs whom the district court dismissed based on Younger abstention is best approached by analyzing the nature of TACM's alleged injuries and the relief all three Plaintiffs seek. We conclude that Younger abstention applies to TACM as well as to the two individual Plaintiffs. First, insofar as TACM seeks relief based on the injuries of the church's individual members such as Seago and Krantz, TACM's claims are plainly barred by Younger–the same as Seago's and Krantz's own claims were barred. Second, with respect to TACM's own rights and alleged injuries, not only are TACM's interests generally aligned with those of its members, the church shares a close relationship with its members. In short, abstention applies to TACM because it alleges standing based on injuries that are either directly or indirectly derivative of those of the individual Plaintiffs.

With respect to the injunctive relief they request, all three Plaintiffs largely make the same allegations collectively. The Complaint seems to conflate the interests of the two individual members with those of TACM when it states that

-12-

[t]he prospective damage to the Plaintiff's [sic] is immediate and irreparable in that the Church continues to suffer loss of income, the closing of the schools, diminishment in the various ministry services offered by the Church, loss of membership, abandonment by its members and employees . . . and the requirement that all parents leave the church in order to receive custody of their children.

(App. at 53 (Compl. ¶ 154).) And although the Complaint delineates the claims of the three Plaintiffs separately, the two individual Plaintiffs re-alleged and incorporated the claims of TACM. (Id. at 43, 49 (Compl. ¶¶ 95, 127).) Moreover, Krantz alleged that the relief he sought "is synonymous with the relief sought by all Plaintiffs," and Seago likewise asserted that "[h]is request for relief will be included in the general request for relief . . . as all plaintiffs are requesting the same relief." (Id. at 48, 52 (Compl. ¶¶ 126, 151).)

TACM now agrees that "[i]t is quite apparent *Younger* abstention applies to the parents whose cases were already pending in dependency-neglect cases in [Arkansas state court]." (Br. at 10; accord id. at 19 n.54 ("It seems beyond dispute that Seago's and Krantz's claims are *Younger* barred and should never have been brought at all because all of their claims could have been brought in Juvenile court and then appealed."), at 20 ("[T]he holding below is correct as to the parents' claims.").) And as it now concedes, "[t]he allegations for the church were somewhat tied to the pending dependency-neglect cases." (Id. at 10.)

With respect to TACM's alleged standing to recover for its own injuries, no different result is possible. Although the church asserts its own rights and alleges various injuries directly to itself, these injuries to the church nevertheless derive, in one degree or another, from the injuries of its members. Most flow directly from the individual members' injuries. For example, the discontinuation of church services due to a "loss of workers" is caused by the fact that its individual members, including the

-13-

two individual Plaintiffs here, have "fled from the church and are now in hiding." (App. at 41 (Compl. ¶¶ 81-82).) The same "lack of workers" has allegedly caused the "tape ministry" to fall behind, the prison inmate program to suffer, the schools to have closed, and the decline in people available to distribute literature. (Id. at 41, 42 (Compl. ¶¶ 83-86, 88).) And the alleged significant decrease in donations, even if not due to a decline in donations by the now scattered members of the church, but rather to a decline in donations by non-members, would presumably derive from the publicity surrounding the seizure of the children, which of course is not unrelated to the individual members claims. (Id. at 41 (Compl. ¶ 87).)

Finally, we address the narrow exceptions to Younger abstention. At least in criminal proceedings, a federal court is not obligated to abstain where the state proceedings were initiated in bad faith or to harass the litigants, Younger, 401 U.S. at 49-54, or where the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," Trainer v. Hernandez, 431 U.S. 434, 447 (1977). "While the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case and we have only recognized it in the criminal context." Aaron v. Target Corp., 357 F.3d 768, 778 (8th Cir. 2004) (internal citation omitted).

Even assuming the exceptions could be available in the civil context, we conclude that they do not apply here. TACM contends that the federal Complaint was drafted intentionally to avoid Younger abstention by alleging that the Defendants conducted the investigation and seized the children in "bad faith," that is, in order to harass and intimidate the church. (App. at 9, 12, 22-38 (Compl, ¶¶ 1, 17, 52-72).) Contrary to TACM's argument that we must accept as true all of the allegations as pled, the numerous state appellate decisions undermine the plausibility of such allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (requiring that allegations be sufficiently plausible on their face to permit court to

-14-

draw reasonable inference that defendant is liable). It is difficult, if not impossible, to accept as plausible an allegation that Defendants seized the children and initiated the state proceedings to retaliate against TACM where the church concedes that "the outcome of the state cases and the affirmance in *Seago I* . . . [o]n November 18, 2009 would certainly support the lack of bad faith by the time the District Court ruled in February 2010." (Br. at 18 n.52.) Yet TACM contends that "[t]hat, however, is not the point as to TACM." (Id.) But in light of TACM's close relationship with its individual members, we are unable to accept TACM's attempt to distinguish any alleged bad faith with respect to TACM from any alleged bad faith with respect to the individual parents. Moreover, TACM's concession is only strengthened now that all of the other Arkansas appellate decisions have uniformly upheld the State's seizure of the children and the termination of their parents' parental rights.

        Accordingly, we affirm.

_____