# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1803

_____

Piper Partridge, Individually as mother and next of kin to Keagan Schweikle and as Special Administratrix of the Estate of Keagan Schweikle; Dominic Schweikle, Individually as father and next of kin to Keagan Schweikle

*Plaintiffs - Appellants*

v.

City of Benton, Arkansas; Kyle Ellison, Individually and as Employee of City of Benton, Arkansas; Kirk Lane, Individually and as Employee of City of Benton, Arkansas; John Does, 1-20, Individually and as Employees of City of Benton, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 7, 2019
Filed: July 3, 2019

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Benton police officer Kyle Ellison shot and killed 17-year-old Keagan Schweikle. His parents, Piper Partridge and Dominic Schweikle, sued Ellison, the

Chief of Police, and the City of Benton under 42 U.S.C. § 1983 and Arkansas law. The district court granted qualified immunity to the officers, and judgment on the pleadings. Partridge and Schweikle appeal. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part, affirms in part, and remands.

I.

On October 17, 2016, Keagan walked into the woods with a gun. His mother called 911. She said he ingested cough syrup and possibly marijuana, was depressed after being suspended from school earlier that morning, and threatened to shoot himself. She said he was not going to hurt anyone but himself. She repeated these facts to the first officer on the scene, explaining that Keagan was suicidal, walked into the woods with a gun, and (she believed) was going to try to hurt himself.

Ellison was dispatched to help with the search. Using a police dog, he found Keagan standing 45 feet away on a riverbank. Ellison told Keagan to show his hands. Keagan turned slightly to his right. Ellison saw a gun in Keagan's right hand, drew his gun, and ordered Keagan to drop the gun. Without speaking, Keagan instead raised the gun to his right temple. Ellison commanded Keagan to drop the gun "several times." Keagan remained silent. As Keagan began moving the gun away from his head, Ellison fired three shots. Two hit Keagan, killing him.

Partridge and Schweikle sued several officers in their individual capacities for excessive force and deprivation of the right to a familial relationship. They also made related *Monell* claims against the officers in their official capacities and the City, including failure to train and failure to adequately investigate police misconduct. They alleged assault and battery under state law. The district court granted the defendants judgment on the pleadings. It found Ellison's use of force was not constitutionally excessive, warranting qualified immunity on the individual-capacity claims. It dismissed the *Monell* claims for lack of an underlying constitutional

violation. It declined to exercise supplemental jurisdiction over the state-law claims. Partridge and Schweikle appeal, arguing they sufficiently pled excessive force.

## II.

This court reviews de novo a judgment on the pleadings, accepting as true the facts in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *Levitt v. Merck & Co.*, 914 F.3d 1169, 1171 (8th Cir. 2019). Judgment on the pleadings "should be granted only if the moving party has clearly demonstrated that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Whatley v. Canadian Pac. Ry.*, 904 F.3d 614, 617–18 (8th Cir. 2018).

In a § 1983 action, qualified immunity shields government officials from liability "when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc), *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome qualified immunity at the pleadings stage, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## A.

This appeal turns on the claim that Ellison violated Keagan's Fourth Amendment right to be free from excessive force. The key is whether Ellison's actions "were objectively reasonable in light of the facts and circumstances confronting him." *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene,"

in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam), *quoting* *Graham v. Connor*, 490 U.S. 386, 396 (1989). "It is reasonable for an officer to use deadly force if he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Rogers*, 885 F.3d at 1121. "But where a person 'poses no immediate threat to the officer and no threat to others,' deadly force is not justified." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015), *quoting* *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Keagan was not suspected of a crime. He was not actively resisting arrest or attempting to flee. He was, however, armed, suicidal, and under the influence of cough syrup and possibly marijuana. Whether a reasonable officer could conclude he posed an immediate threat depends on the circumstances at the time of the shooting. Taking the facts in the complaint as true, "Keagan simply began to move the gun away from his head," "was shot as he began to move the gun away from his head, per Ellison's orders to 'drop the gun,'" and "never pointed the gun at the officers." On these facts, no reasonable officer could conclude that a compliant individual posed an immediate threat. *See* *Henderson v. City of Woodbury*, 909 F.3d 933, 939–40 (8th Cir. 2018) (reversing grant of qualified immunity where testimony supported a finding that suspect was shot after surrendering to police); *Division of Emp't Sec. v. Board of Police Comm'rs*, 864 F.3d 974, 979 (8th Cir. 2017) (holding burglary suspects' compliance with officers' commands meant they did not pose an immediate threat to the officers).

The district court concluded it would have "been nearly impossible for Ellison to tell whether Keagan was moving the gun away from his head to comply with Ellison's order or if he was repositioning the gun to aim it at the officers." *See* *Hernandez v. Jarman*, 340 F.3d 617, 624 (8th Cir. 2003) ("The reasonableness of [an

officer's] use of deadly force is judged from the perspective of a reasonable officer on the scene, and not from the unknowable intentions of the victim." (internal citation omitted)). This conclusion does not accept the facts in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.

Keagan had to move the gun to comply with Ellison's commands. The complaint does not tell the direction or speed Keagan moved the gun, how far he moved it before Ellison shot him, or the timing of the facts. The complaint does not give Ellison's views. *See Dooley v. Tharp*, 856 F.3d 1177, 1183 (8th Cir. 2017) (collecting cases concluding, on summary judgment, officers' beliefs that suspects posed serious threats justifying deadly force were reasonable, even if mistaken, based on perceptions that suspects pointed a gun in their direction or took other menacing action); *Rogers*, 885 F.3d at 1121–22 (granting qualified immunity where reasonable officer had probable cause to believe suicidal defendant posed threat of serious physical harm when "she raised the gun to [the officer's] shin level"); *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (concluding, on summary judgment, officer's use of deadly force was objectively reasonable where the officer said a fleeing armed-robbery suspect "turned and looked at him while the two were in close proximity and moved as though reaching for a weapon"). Based on the complaint, Keagan may have slowly lowered the gun while pointing it in the opposite direction of Ellison. This would be "so obviously an attempt to comply with [Ellison's] commands to drop the [gun] that a reasonable officer would have known that opening fire would constitute excessive force." *Partlow v. Stadler*, 774 F.3d 497, 503 (8th Cir. 2014). *See Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018) (denying qualified immunity where, although suspect initially failed to follow commands, he was in full compliance at the time force was used); *Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011) (denying qualified immunity where, under the plaintiff's version of the facts, a reasonable officer would have known he was complying with the officers' orders just before being tasered). Based on all reasonable inferences, this court cannot conclude Ellison's actions were objectively

reasonable.  *See* **Wilson v. City of Des Moines**, 293 F.3d 447, 452–53 (8th Cir. 2002) (factual issues about how suspect turned towards officers—whether he turned in a shooting stance—precluded qualified immunity on excessive-force claim).

The district court relied on several summary judgment cases, including *Garcyznski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009).  There, the Eleventh Circuit granted qualified immunity to officers that shot a suicidal individual (in a car) who refused to drop his weapon, after he "swung the gun from his head in the direction of the officers."  **Garcynzski**, 573 F.3d at 1168.  That court noted—on summary judgment—that even if Garcyznski did not point his gun in the officers' direction, his refusal "to comply with the officers' repeated commands to drop his gun justified the use of deadly force under these particular circumstances."  **Id.** at 1169.  Based on the facts pleaded (and reasonable inferences) here, a reasonable officer would have known that Keagan was moving his gun in compliance with commands to drop the gun.  Shooting him under such circumstances would constitute excessive force, even though he was armed.  *See* **Perez v. Suszczynski**, 809 F.3d 1213, 1220 (11th Cir. 2016) ("[T]he mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit.  Where the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination.").  *Cf.* **Craighead v. Lee**, 399 F.3d 954, 961–62 (8th Cir. 2005) (denying qualified immunity where officer shot suspect holding a gun "continuously over [his] head, pointed upward," while struggling with another person).

Keagan's right to be free from excessive force under these circumstances was clearly established in October 2016.  Taking the facts in the complaint as true and drawing all reasonable inferences in Keagan's favor, Ellison shot a non-resisting, non-fleeing minor as he moved his gun in compliance with commands to drop his gun.  Under these circumstances, no reasonable officer could conclude Keagan posed an immediate threat of serious physical harm.  The law was "sufficiently clear that

every reasonable official would understand that" shooting an individual in these circumstances is unlawful. ***District of Columbia v. Wesby***, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted). *See **Henderson***, 909 F.3d at 940 (holding it was clearly established in 2012 that shooting a suspect who surrendered to police and did not pose a threat of serious harm constituted excessive force); ***Wealot v. Brooks***, 865 F.3d 1119, 1126–27 (8th Cir. 2017) (noting it was clearly established in 2013 that shooting a suspect attempting to surrender was not objectively reasonable); ***Craighead***, 399 F.3d at 962–63 (collecting cases that "put officers on notice . . . that they may not use deadly force under circumstances in which they should know that the suspect does not present an immediate threat of serious physical injury or harm").

Ellison contends that *Partlow* would "give a reasonable officer the impression that shooting Keagan was constitutional." This is wrong. The officers in *Partlow* saw a suicidal suspect "in the dark of night" forcefully push open an apartment-building door "with a shotgun in his hand," and only "seconds passed" until they opened fire. ***Partlow***, 774 F.3d at 502. Before shooting, the officers ordered the suspect to drop the gun, and "they observed [him] move the shotgun in such a way that the officers believed that [he] was aiming the barrel of the shotgun at them." ***Id.*** Based on the facts in the summary judgment record, this court concluded the officers had a reasonable belief, even if mistaken, that the suspect was aiming at them. ***Id.*** at 503. Here, however, the complaint does not allege that Keagan moved to aim his gun at Ellison. Nor is there an allegation that Ellison believed Keagan to be moving to aim at him. *Partlow* is consistent with the clearly established law that it is objectively unreasonable to shoot an individual who does not pose an immediate threat to the officers or others. *See **id.*** at 502–03 (ruling out possibility that suspect's movement was obvious attempt to comply with officers' commands).

Because this court reverses the judgment on the pleadings on the excessive force claim, the dismissal of the related *Monell* claims is reversed as well. *See*

***Wealot***, 865 F.3d at 1128 (noting the general rule that "for municipal liability to attach, individual liability first must be found on an underlying substantive claim").

In light of this court restoring federal claims, the dismissal of Partridge's and Schweikle's state-law claims is vacated.

B.

Partridge and Schweikle claim Ellison's unjustified shooting violated their Fourteenth Amendment due process rights to a familial relationship. True, the "practical effect" of a police officer killing a minor child is "to deny the [parents] the fundamental right to raise [their] son." ***Mattis v. Schnarr***, 502 F.2d 588, 595 (8th Cir. 1974). The *Schnarr* case does not address a claim for damages under § 1983 in these circumstances.[1]

Pleading a plausible familial-relationship claim under § 1983 requires an allegation that the state action was intentionally directed at the familial relationship. *See* ***Harpole v. Arkansas Dep't of Human Servs.***, 820 F.2d 923, 927–28 (8th Cir. 1987) ("Protecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct, especially when the loss is an indirect result of that conduct."), *favorably citing* ***Ortiz v. Burgos***, 807 F.2d 6, 8–9 (1st Cir. 1986) (noting Supreme Court substantive-due-process cases protect the right to make certain private family decisions, such as whether to bear children, and deal with governmental attempts to directly affect the parent-child relationship,

---

[1] At issue in *Schnarr* was the plaintiff's standing to bring a constitutional challenge for a declaratory judgment against Missouri statutes authorizing deadly force for some arrests. *See Schnarr*, 502 F.2d at 593–95. The Supreme Court in *Ashcroft v. Mattis*, 431 U.S. 171, 172–73 (1977), abrogated *Schnarr*'s standing holding, based on a lack of "present right" at stake. *See* ***Frost v. Sioux City***, 920 F.3d 1158, 1162 (8th Cir. 2019) (recognizing the abrogation).

such as terminating parental rights, but "[t]he Court has never held that governmental action that affects the parental relationship only incidentally . . . is susceptible to challenge for a violation of due process"). *See also **Reasonover v. St. Louis Cty.***, 447 F.3d 569, 585 (8th Cir. 2006) (rejecting familial-association claim where plaintiff "present[ed] no evidence that defendants had an intent to interfere with the relationship between [plaintiff] and her daughter"); ***Singleton v. Cecil***, 176 F.3d 419, 423 (8th Cir. 1999) (en banc), *aff'g in pertinent part* 133 F.3d 631, 635 (8th Cir. 1998) ("A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship."), *quoting **Morfin v. Albuquerque Pub. Sch.***, 906 F.2d 1434, 1440 (10th Cir. 1990).

Here, Partridge and Schweikle did not allege in their complaint, or argue on appeal, that Ellison's shooting was directed at their relationship with Keagan. This forecloses their claims. *Accord **Gorman v. Rensselaer Cty.***, 910 F.3d 40, 47–48 (2d Cir. 2018) ("Based on the Supreme Court's directive that only deliberate conduct implicates due process, we join the consensus view of the circuit courts: a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship."), *citing **Daniels v. Williams***, 474 U.S. 327, 331 (1986) ("Historically, th[e] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."); ***Russ v. Watts***, 414 F.3d 783, 789–90 (7th Cir. 2005) (en banc) (collecting cases) ("Under any standard, finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court."). *But see **Smith v. City of Fontana***, 818 F.2d 1411, 1420 n.12 (9th Cir. 1987) (refusing to adopt requirement that plaintiff allege state official intentionally targeted the familial relationship to state a due process violation under § 1983), *overruled on other grounds by **Hodgers-Durgin v. de la Vina***, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999) (en banc).

The judgment on the pleadings on the familial-relationship claims is affirmed. *See **Tony Alamo Christian Ministries v. Selig***, 664 F.3d 1245, 1248 (8th Cir. 2012) ("We may affirm based on any grounds supported by the record."). Because Partridge and Schweikle failed to allege a Fourteenth Amendment violation, their related *Monell* claims were properly dismissed. *See **Rogers***, 885 F.3d at 1122 ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); ***Moore v. City of Desloge***, 647 F.3d 841, 849 (8th Cir. 2011) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

* * * * * * *

The judgment is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.

_____