# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2165
_____

Nicole Klum, Estate of Bobby Jo Klum; Wanda Albright

*Plaintiffs - Appellants*

v.

City of Davenport; Mason Roth

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: January 14, 2025
Filed: July 31, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Officer Mason Roth shot and killed Bobby Jo Klum as he walked through a residential neighborhood with a gun to his head, evading arrest and ignoring officer commands to drop the weapon. Klum's spouse and mother (Plaintiffs) sued Officer Roth and the City of Davenport under 42 U.S.C. § 1983 for allegedly violating

Klum's Fourth Amendment right against unreasonable seizure. The district court[1] granted qualified immunity to Officer Roth and concluded the City of Davenport was not liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). We affirm.

## I. Background

On October 13, 2021, Davenport Police Officer Dustin Mooty went to Klum's house to follow up on a report that Klum had a confirmed warrant for his arrest. While parked in an alley near Klum's house, Officer Mooty observed Klum walking out of the backyard. Klum saw Officer Mooty and began to flee. Officer Mooty turned on his vehicle's emergency lights, chirped his siren, pulled into the driveway of the house, exited his vehicle, and began chasing Klum on foot. While running after Klum, Officer Mooty reported over his radio that he was in pursuit of Klum. Officer Mooty demanded that Klum stop and advised Klum he had a warrant for his arrest. Klum did not stop.

While still in pursuit, Officer Mooty observed Klum holding a gun to his head. Officer Mooty reported his observations over his radio and commanded Klum to get on the ground. Klum did not comply and began walking through the residential neighborhood while continuing to hold the gun to his head. Klum then disappeared into the neighborhood. Other officers began to assist in the pursuit of Klum.

Several minutes later, Officer Lucas Rusk observed Klum walking through the neighborhood with a gun to his head and attempted to speak with Klum, asking him to "talk about this" and to put down the gun. Klum did not comply and walked in the opposite direction. Less than a minute later, Klum walked back in Officer Rusk's direction and into a nearby alleyway. Officer Roth was positioned at the end of the alleyway when he observed Klum walking in his direction with a gun to his

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

head. Officer Roth ordered Klum multiple times to put his hands up and drop the gun. Klum did not comply and continued to walk down the alleyway in Officer Roth's direction. Klum then walked out of the alleyway and south onto the western sidewalk of Iowa Street away from the officers.

Officers followed Klum and yelled at bystanders to "get out of the street" and to "go inside." Officers repeatedly commanded Klum to drop the gun. He did not comply and continued to walk south on the western sidewalk of Iowa Street past 9th Street while holding the gun to his head. Officers Robert Welch and Angela Jarrin then each fired a less lethal weapon at Klum. The rubber bullet from Officer Welch's weapon hit Klum in the torso as he faced toward the officers. Unaffected by the rubber bullet, Klum turned and continued to walk away from the officers.

During this time, two bystanders sat in a car on the east side of the 9th Street intersection; several other bystanders watched from a front yard on the east side of Iowa Street near 8th Street, approximately one block south from the 9th Street intersection; and two other bystanders, a woman and a young girl, walked north on the east side of Iowa Street as Klum approached the 9th Street intersection from the west side of Iowa Street. As officers fired the less lethal weapons at Klum, the woman and young girl ran south away from the 9th Street intersection and the bystanders in the front yard retreated. Officers repeatedly yelled at the bystanders to go inside. Despite the officers' commands, several bystanders remained outside.

Seconds after the officers fired the last rubber bullet, Klum began crossing the street toward the east side of Iowa Street, between 9th Street and 8th Street. Klum was ordered to drop the gun and to stop walking. He did not do so. Before Klum got to the eastern sidewalk of Iowa Street, Officer Roth, without verbal warning, shot and hit Klum. Klum fell to the ground and later died.

Plaintiffs sued Officer Roth and the City of Davenport, alleging use of excessive force under 42 U.S.C. § 1983 in violation of the Fourth Amendment to the United States Constitution and other state law claims. The parties filed cross-

motions for summary judgment.  The district court granted summary judgment to Officer Roth and the City of Davenport on all claims.  As to their excessive force claim, the district court concluded Klum's Fourth Amendment right against unreasonable seizure was not violated; nor did Klum possess a clearly established right against seizure by deadly force under the circumstances.  Plaintiffs appeal only the district court's grant of summary judgment based on qualified immunity as to their excessive force claim against Officer Roth and the City of Davenport.

## II. Analysis

We review de novo a grant of summary judgment based on qualified immunity.  *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023).  "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)).[2]  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*

---

[2]We grant Officer Roth and the City of Davenport's motion to strike portions of Plaintiffs' brief.  *See United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 413 (8th Cir. 2012) (considering "only evidentiary materials that were before the trial court at the time the summary judgment ruling was made" (quoting *Barry v. Barry*, 78 F.3d 375, 379 (8th Cir. 1996))).

Preliminarily, Plaintiffs challenge the district court's finding that Klum was moving toward bystanders at the time he was shot. Plaintiffs claim the video footage establishes "Klum turned to walk in a direction further away from the allegedly at-risk bystanders." Though we are required to make all reasonable inferences in the non-movant's favor while reviewing the facts, we are not required to "accept unreasonable inferences or sheer speculation as fact." *Gilani v. Matthews*, 843 F.3d 342, 347, 349 (8th Cir. 2016) (quoting *Reed v. City of St. Charles*, 561 F.3d 788, 791 (8th Cir. 2009)).

Here, the district court found that after Klum was hit by the rubber bullet, "he turned away from the officers and began walking across Iowa Street in a 'southeasterly direction' toward a collection of bystanders." The district court relied on video footage submitted by Plaintiffs in support of their motion for summary judgment. The video footage shows Klum crossing Iowa Street in a southeasterly direction; several bystanders retreating to a house on the east side of Iowa Street near 8th Street when Officer Roth shot Klum; and Klum falling to the ground near the east side of Iowa Street and 8½ Street as several bystanders remained outside. Based on the video footage, Klum continued to walk south, diagonally toward the east side of Iowa Street in the general direction of the bystanders when Officer Roth shot him. Thus, accepting the proposed inference that "Klum turned to walk in a direction further away from the allegedly at-risk bystanders" would be unreasonable given what the video footage shows. *See Gilani*, 843 F.3d at 349. *See also Scott*, 550 U.S. at 380–81 (holding that when undisputedly reliable video footage captures the relevant events, the evidence should be viewed in "the light depicted by the videotape").

Plaintiffs next argue the undisputed evidence establishes the district court erred by granting Officer Roth qualified immunity. An officer is entitled to qualified immunity, shielding him from liability unless: "(1) he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation." *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019). If either prong is not satisfied, then

the officer is entitled to qualified immunity, *id.* at 982–83, and this court may analyze either prong first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

We conclude that any right was not clearly established at the time and therefore Officer Roth is entitled to qualified immunity. "For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) (quoting *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019)). "This requires 'existing precedent' to place the question 'beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "[W]e look to existing precedent that involves sufficiently 'similar facts' and that "'squarely governs" the specific facts at issue' to ensure Officer [Roth] had 'notice that [his] specific use of force [was] unlawful.'" *Id.* (last two alterations in original) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).

"Claims against local police for excessive force during a seizure are analyzed under the Fourth Amendment's reasonableness standard." *Lankford v. City of Plumerville*, 42 F.4th 918, 921 (8th Cir. 2022). "The use of deadly force to restrain a person is a seizure under the Fourth Amendment." *Dimock ex rel. Dimock-Heisler v. City of Brooklyn Ctr.*, 124 F.4th 544, 552 (8th Cir. 2024). Objectively unreasonable uses of deadly force violate the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The key question is whether an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009) (quoting *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005)). This court views the circumstances from the perspective of a reasonable officer on the scene, based on "those facts known to the officer at the precise moment [he] effectuate[d] the seizure." *Cole*, 959 F.3d at 1132 (alterations in original) (quoting *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995)). In evaluating the totality of the circumstances, we assess "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers

or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Here, Klum had a warrant for his arrest and was actively fleeing while holding a gun to his head. However, Officer Roth knew only that Klum had been evading arrest and holding a gun to his head. Whether a reasonable officer could conclude Klum posed an immediate threat to the safety of others depends on the totality of the circumstances known at the time of the shooting. *See Cole*, 959 F.3d at 1132; *Nance*, 586 F.3d at 610. "We have consistently held deadly force is not unreasonable where an officer has 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" *Lankford*, 42 F.4th at 921 (quoting *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019)). While "it was clearly established that a person does not pose an immediate threat of serious physical harm to another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion," *Cole*, 959 F.3d at 1134, Klum's possession of a firearm was not the only fact and circumstance confronting the officers that day, *see Nance*, 586 F.3d at 610.

Here, there were several bystanders outside near a house approximately half a block from where Klum was shot and in the general direction Klum was heading after the officers fired the rubber bullets at him. Therefore, even if Klum never moved the gun away from his head or aimed it at bystanders, the officers were confronted with an evolving set of circumstances when they observed that Klum was unaffected by the rubber bullet, changed course and began walking in the general direction of the bystanders with his gun to his head, and did not comply with the officers' commands to stop. *See Graham*, 490 U.S. at 396–97.

Notwithstanding the circumstances, Plaintiffs argue *Partridge v. City of Benton*, 929 F.3d 562 (8th Cir. 2019), "is right on point." *Partridge*, however, does not clearly establish that Officer Roth's use of deadly force against Klum was objectively unreasonable in the circumstances of this case. In *Partridge*, a seventeen-year-old boy "walked into the woods with a gun." *Partridge*, 929 F.3d at

564. The boy's mother called 911 and reported he had "ingested cough syrup and possibly marijuana, was depressed," and "threatened to shoot himself." *Id.* An officer eventually found the boy standing by a riverbank. *Id.* The officer told him to show his hands. *Id.* As the boy turned, the officer saw a gun in his hand and ordered him to drop it. *Id.* Instead, the boy raised the gun to his temple, and the officer commanded him to drop the gun. *Id.* The boy stayed silent but then began moving the gun away from his head when the officer shot and killed him. *Id.* Based on these facts, this court determined "no reasonable officer could conclude that a compliant individual posed an immediate threat" and that the boy's "right to be free from excessive force under these circumstances was clearly established." *Id.* at 565, 567.

In contrast to the boy in *Partridge*, Klum was non-compliant and evaded arrest while walking through a residential neighborhood with a gun to his head and in the general direction of bystanders, including a woman who was seen earlier with a young girl, when Officer Roth shot him. At the time, the woman was approximately 148 feet from Klum and another bystander was approximately 179 feet from Klum. These circumstances differentiate this case from *Partridge*, and therefore, Plaintiffs cannot rely on it to show the law was clearly established that Officer Roth could not use deadly force against Klum.

Plaintiffs also argue the district court's reliance on *Kong ex rel. Kong v. City of Burnsville*, 960 F.3d 985 (8th Cir. 2020), to conclude Klum's purported right against deadly force under the circumstances was not clearly established, "is misplaced." We disagree. In *Kong*, the court concluded that though "Kong may not have threatened an officer with his knife, he posed a threat to citizens" in the parking lot and those that "passed by along on the frontage road." *Kong*, 960 F.3d at 993. And this court's case law, at the time of his shooting, made clear that "officers could use deadly force to stop a person armed with a bladed weapon if they reasonably believed the person could kill or seriously injure others." *Id.*

Here, Klum neither pointed the gun at the bystanders nor threatened officers, but he did walk in the bystanders' general direction like the man in *Kong*. *See id.* at 990. Nevertheless, Plaintiffs emphasize the bystanders here were farther away than the bystanders in *Kong* when Officer Roth shot Klum and argue that "the evidence in this case presents material issues of fact regarding who and to what extent anyone was in jeopardy at the time [Officer] Roth killed Klum."[3] We disagree. Though Plaintiffs note that the district court "did not address the lack of accuracy involved in shooting a handgun at greater than 75 feet," they do not otherwise challenge the district court's finding "that a handgun is a lethal threat to a person within 300 feet." And it is undisputed that the bystanders were within that lethal range. Thus, at the time it was not clearly established that shooting Klum under the totality of these circumstances[4] was objectively unreasonable.

Plaintiffs also argue Officer Roth's failure to provide a warning before shooting Klum requires reversal. It is true we have held that *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985), "requires the officer to give a warning 'where feasible.'" *Ludwig v. Anderson*, 54 F.3d 465, 474 (8th Cir. 1995) (quoting *Garner*, 471 U.S. at 11–12); *Krueger v. Fuhr*, 991 F.2d 435, 440 (8th Cir. 1993) (same). However, a failure to warn does not automatically render the use of deadly force unreasonable.

---

[3]Plaintiffs' reliance on *Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995), to support their argument is unavailing. In *Ludwig*, officers shot a man who was "running away from all bystanders." *Ludwig*, 54 F.3d at 469. The facts and circumstances confronting the officers in *Ludwig* in the woods differ from the present case involving Klum, who was in a residential neighborhood crossing a street in the general direction of several bystanders, and would not put a reasonable officer on notice that using deadly force under the present circumstances was objectively unreasonable. Further, the material factual issues that were present in *Ludwig* are not present here, *see id.* at 473–74, and *Ludwig* involved a man fleeing with a knife, not a gun.

[4]This case, however, does not stand for the proposition that lethal force is reasonable any time a suicidal individual with a weapon is within 300 feet of a bystander or for the proposition that lethal force is reasonable based on speculation *alone* about what someone with a gun might do in the future.

*See Dimock*, 124 F.4th at 554. More importantly, we do not view this as a failure to warn case, but rather an escalation case. The officers' repeated demands to drop the gun and the use of non-lethal rounds should have provided Klum "adequate notice that any action the officers perceived as escalation could result in the use of deadly force." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). *Accord Est. of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012). When Klum refused to stop walking and drop his weapon, and instead proceeded in the general direction of bystanders, Officer Roth could have perceived the action as an escalation requiring use of deadly force. At the very least, this court's case law at the time of Klum's shooting did not place the question of his right to be free from deadly force in this situation "beyond debate." *Cole*, 959 F.3d at 1134 (quoting *White*, 580 U.S. at 79). Therefore, because not every reasonable officer would have understood that the use of deadly force here violated the Fourth Amendment, the district court properly granted Officer Roth qualified immunity.

Plaintiffs next challenge the district court's grant of summary judgment on their *Monell* claim against the City of Davenport. Under *Monell*, "a municipality [is held] liable for actions of its employees or agents that violate a plaintiff's constitutional rights if the violation stemmed from an official municipal policy or custom." *Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019) (citing *Monell*, 436 U.S. at 694–95).

The district court concluded the City of Davenport was entitled to summary judgment on Plaintiffs' *Monell* claim because Plaintiffs failed to raise a genuine issue as to whether the City of Davenport had a policy that directly caused the use of deadly force that they believed to be a constitutional violation. The district court explained the evidence cited by Plaintiffs, at most, supported a finding that the City of Davenport "had a policy of teaching officers principles about their reaction times relative to the amount of time a suspect may take to point and shoot his weapon" but did not indicate it was the City of Davenport's policy to exercise deadly force to seize armed suspects in situations like the one here. We agree with the district court that Plaintiffs failed to raise a genuine issue as to whether any alleged violations of

Klum's constitutional right stemmed from the City of Davenport's policy informing officers of reaction times or whether the City of Davenport had a policy of training officers "to shoot first." Therefore, the City of Davenport is entitled to summary judgment on Plaintiffs' *Monell* claim.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____